STATE OF CONNECTICUT *v.* PETER J. BILLIAS
(6264)
(6265)

BORDEN, O'CONNELL and STOUGHTON, Js.

Argued November 7, 1988—decision released March 14, 1989

*John F. Cocheo,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti, Sr.,* state's attorney, for the appellee (state).

*M. Donald Cardwell,* with whom, on the brief, were *John M. Abels* and *Melvin Scott,* for the appellee (defendant).

BORDEN, J. The state appeals, with the permission of the trial court, from two separate judgments of the court dismissing the informations filed against the defendant.[1] The first information charged the defendant with illegal possession of marihuana in violation of General Statutes § 21a-279 (c). The second information charged him with illegal possession of cocaine with intent to sell in violation of General Statutes § 21a-278 (b), and illegal possession of drug paraphernalia in violation of General Statutes § 21a-267 (a). The dismissals followed the granting of the defendant's motion to suppress certain evidence contained in a gym bag taken by the police from the defendant's car at the

---

[1] The separate appeals were consolidated in this court.

time of his arrest and searched while he was being booked at police headquarters.[2] The state claims that the court erred in granting the motion to suppress the evidence yielded by the search of the bag because (1) the search was a valid inventory search, (2) the search was undertaken in reasonable good faith reliance on written police guidelines, and (3) the seizure of the bag and its ensuing search was valid as a search incident to a lawful custodial arrest.[3] We find no error.

[2] The defendant's original motions to suppress and dismiss were filed in Docket No. CR-10-159706, in which the defendant was charged with one count of illegal possession of marihuana, on the basis of the search of the defendant's gym bag at state police headquarters on December 31, 1986. The results of that search were the basis of a search warrant for the defendant's car. The fruits of the search pursuant to the warrant were the basis of the information in Docket No. CR-10-159947, in which the defendant was charged with illegal possession of cocaine with intent to sell and illegal possession of drug paraphernalia. After the court granted the defendant's motions to suppress and dismiss in the first case, it also granted the defendant's oral motion to dismiss the second information because it was the result of the first search. We treat the second search as dependent on the first because the parties and the court have done so. Thus, our disposition of the search in Docket No. CR-10-159706 governs the state's appeal in both cases.

[3] The state, at oral argument in this court but not in its brief, offered an additional ground of error, namely, that the evidence yielded by the search was nonetheless admissible under the inevitable discovery exception to the exclusionary rule. See, e.g., *State* v. *Badgett,* 200 Conn. 412, 433, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). We decline to consider this claim because the state did not raise it in the trial court during the suppression hearing or in its trial brief. It did not do so until it filed a motion to reargue in the trial court after the court's decision, which the court denied. Thus the failure of the state to raise it at the hearing deprived the defendant and the court of the opportunity to explore its factual basis, if any. Furthermore, although the state included this claim in its preliminary statement of issues in this court, it did not brief it. Thus, it is deemed to have abandoned the claim. *State* v. *Samaha,* 180 Conn. 565, 565 n.1, 430 A.2d 1290 (1980). Finally, we can perceive no basis in this record for a conclusion that "the lawful means which made discovery inevitable were possessed by the police and were being actively pursued *prior* to the occurrence of the constitutional violation." (Emphasis in original.) *State* v. *Badgett,* supra. Thus, this case does not present an appropriate instance for remand to the trial court to determine whether the inevitable discovery exception to the exclusionary rule applies. Compare id., 433–34.

The defendant moved to suppress all evidence seized by the police from the defendant on December 31, 1986, on the grounds that the search was invalid under both the fourth and fourteenth amendments of the United States constitution, and article first, § 7, of the Connecticut constitution. The following undisputed evidence was presented on the motion to suppress, through the testimony of Gerald T. Carson, a constable of the town of Ledyard.

During the afternoon of December 31, 1986, Carson, while in his cruiser, stopped the defendant in his car for traveling in excess of fifty-five miles per hour in a twenty-five mile per hour zone. After obtaining the defendant's driver's license and registration, Carson determined by a records check that the defendant's license was under suspension. Carson asked the defendant to step out of his car, and arrested him for operating a motor vehicle while his license was under suspension. Carson then summoned another police officer to the scene in order to help prevent an accident, because a commercial towing company was going to tow the defendant's car from its hazardous position on the highway and because Carson was going to take the defendant to the police station. While the defendant was in Carson's cruiser, Carson took custody of a closed, canvas gym bag from the passenger section of the defendant's car "because we [were] going to tow the vehicle . . . ." Carson also testified that at that time he had no reason to believe that the bag contained contraband or explosives, or that it was anything other than a bag in a motor vehicle that he had stopped for an infraction.

Carson testified further that it was "not usual" to inventory the contents "of the entire car," and that he refrained from doing so because "there was nothing in the car but [the gym] bag and a radar detector . . . . " He copied the serial number of the radar detec-

tor, but did not take custody of it. He did not inventory or take custody of anything in the glove compartment. The defendant's car was towed, and Carson testified that he took the defendant, along with the gym bag, to the state police headquarters in Montville where the defendant was to be booked for operating a motor vehicle while his license was under suspension.

About three or four minutes after arriving at police headquarters, Carson asked the defendant to empty his pockets, which yielded $1000 in bills of small denominations. Carson testified that he "then began to inventory the bag . . . ." He opened the gym bag, which contained two bundles of cash totaling $960 and a small plastic bag containing marihuana. In this connection, Carson testified that the Ledyard police had a "written policy . . . with regards to . . . these inventory-type matters," namely, that "the state police [direct] us to inventory all personal items on any accused person brought into the police station . . . and take custody of same." He testified that the reason for this was "to make sure we had an accurate receipt of what the defendant had when he came into the department so that, when he left, he would get all the items that we'd taken care of."[4]

In the trial court, the state sought to justify the warrantless search of the bag on the sole ground that it was a valid inventory search under *Colorado* v. *Bertine*, 479 U.S. 367, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987); *Illinois* v. *Lafayette*, 462 U.S. 640, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983); and *State* v. *Gasparro*,

---

[4] Although it was not brought to the attention of the trial court at the hearing on the motion to suppress, we note that the trial court file contains a multi-page document, dated December 31, 1986, signed by Carson, entitled "Inventory of Property Seized Without A Search Warrant." This document lists the serial numbers and denominations of all the currency seized from the defendant, presumably the cash seized from both the gym bag and his pants pockets. It does not refer, however, to the gym bag itself.

194 Conn. 96, 107–108, 480 A.2d 509 (1984), cert. denied, 474 U.S. 828, 106 S. Ct. 90, 88 L. Ed. 2d 74 (1985).[5] The court held, however, that the search of the bag at the police station was not the result of an inventory search of the defendant's car, and that the search of the bag at the police station did not fall within the parameters of *Illinois* v. *Lafayette,* supra. The court granted the motion to suppress on both federal and state constitutional grounds,[6] and granted the defendant's subsequent motions to dismiss. See footnote 2, supra. This appeal followed.

## I

### INVENTORY SEARCH

We first consider the state's claim that the search of the defendant's gym bag was a valid inventory

[5] In *Colorado* v. *Bertine,* 479 U.S. 367, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987), the United States Supreme Court upheld a warrantless inventory search of a closed backpack that was found in a van impounded when the defendant was arrested for driving the van while under the influence of alcohol.

In *Illinois* v. *Lafayette,* 462 U.S. 640, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983), the United States Supreme Court upheld a warrantless inventory search of a shoulder bag carried by the defendant into the police station at the time of his arrest.

In *State* v. *Gasparro,* 194 Conn. 96, 480 A.2d 509 (1984), our Supreme Court upheld a warrantless inventory search of a briefcase that was found in the passenger compartment of a car towed to police headquarters from a public street upon the arrest of the defendant.

[6] Although the trial court purportedly relied on the state constitution as a basis for its decision, the defendant did not offer nor did the trial court engage in a separate analysis of inventory searches under the state constitution. On appeal, the state's claims are couched only in federal constitutional terms, and the defendant's sole reference to the state constitution is a plea, citing *State* v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985), that "this Court should continue to follow the Connecticut Supreme Court's decisions which construe the State Constitution as affording greater protection to the criminal defendant than the United States Constitution." Under these circumstances, it is clear that no such analysis has been offered, and we decline to undertake one. *State* v. *Nelson,* 17 Conn. App. 556, 568–69 n.9, 555 A.2d 426 (1989).

search. We begin our analysis with the seizure of the bag from the defendant's car. We agree with the defendant and the trial court that the search of the bag at state police headquarters, following its seizure from the car, cannot be justified as part of an inventory search of the defendant's car.

"In the performance of their 'community caretaking functions,' police are frequently obliged to take automobiles into their custody." *State* v. *Gasparro,* supra, 107, quoting *South Dakota* v. *Opperman,* 428 U.S. 364, 368, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976). This exception to the warrant requirement, which does not depend on the presence of probable cause, is based on the interests of the police in protecting the owner's property while it is in their custody, in protecting themselves against claims of lost, stolen or vandalized property, and in protecting themselves against danger potentially posed by the property inventoried. *Colorado* v. *Bertine,* supra; *State* v. *Murphy,* 6 Conn. App. 394, 398, 505 A.2d 1251 (1986).[7]

Although the validity of an inventory search does not depend on whether the police could have accomplished the same ends by means less intrusive than those actually employed,[8] an inventory search must be conducted pursuant to "reasonable police regulations relating to inventory procedures administered in good faith

[7] The state does not claim that the record in this case supports an inventory search based on potential danger posed by the contents of the defendant's gym bag. Indeed, Carson's testimony specifically disclaimed any such basis.

[8] We note in this regard that the approach we took in *State* v. *Murphy,* 6 Conn. App. 394, 400–402, 505 A.2d 1251 (1986) (inventory search of car invalid because defendant available to make arrangements other than towing), based on the then current authorities, has been disavowed by the United States Supreme Court in *Colorado* v. *Bertine,* 479 U.S. 367, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987). *State* v. *Nelson,* 17 Conn. App. 556, 573, 555 A.2d 426 (1989); see also 3 W. LaFave, Search and Seizure § 7.3 (2d Ed. 1989 Sup.).

. . . ." *Colorado* v. *Bertine,* supra, 374. This require-
ment, which is based on the need to minimize police
discretion in undertaking such searches, is an unbroken
cord that ties together the inventory search cases. See,
e.g., *Colorado* v. *Bertine,* supra, 374 n.6 ("our decisions
have always adhered to the requirement that invento-
ries be conducted according to standardized criteria");
*Illinois* v. *Lafayette,* supra, 648 (not unreasonable for
police, as part of routine procedure incident to incar-
cerating arrested person, to search any article in his
possession, according to established inventory proce-
dures); *South Dakota* v. *Opperman,* supra, 383 (when
inventory search conducted according to established
police department policy, officer does not make discre-
tionary and perhaps arbitrary determination to search)
(Powell, J., concurring); *United States* v. *Frank,* 864
F.2d 992 (3d Cir. 1988) (permissible for police to open
closed container in inventory search if following stan-
dard police procedures); *State* v. *Badgett,* 200 Conn.
412, 431, 512 A.2d 160, cert. denied, 479 U.S. 940, 107
S. Ct. 423, 93 L. Ed. 2d 373 (1986) (state has burden
to offer evidence of police department practice for
inventory searches); *State* v. *Gasparro,* supra, 108
(standardized procedure for making inventory as soon
as reasonable after reaching police station deters false
claims and inhibits theft or negligent handling of
arrestee's possessions); *State* v. *Nelson,* 17 Conn. App.
556, 573–74, 555 A.2d 426 (1989) (inventory search
must be conducted according to established procedure).

It is clear that the police headquarters search of the
defendant's bag seized from the defendant's car was
not pursuant to any police regulation or practice
regarding inventory searches of cars. Carson's testi-
mony disclaimed any practice of inventorying the con-
tents of the car, which was to be towed from the
highway, and the state did not otherwise establish any
such regulation or practice. Thus, with respect to the

seizure of the bag from the car and the later search of the bag at police headquarters, the state did not offer evidence to meet its burden of proving a police department practice for inventory searches of impounded vehicles. *State* v. *Badgett,* supra, 431; see *State* v. *Gasparro,* supra, 108 (police officer testified that it was routine departmental policy to bring impounded vehicle to police parking lot and make complete inventory of contents); *State* v. *Nelson,* supra.

We turn, therefore, to the state's principal inventory claim, namely, that the search of the defendant's bag was a valid stationhouse inventory search under *Illinois* v. *Lafayette,* supra. We disagree.[9]

In *Lafayette,* the defendant was arrested for disturbing the peace and taken to the police station. He was carrying a purse-type shoulder bag. At the police station, the police opened the bag and examined its contents "because it was standard procedure to inventory 'everything' in the possession of an arrested person." Id., 642. The bag contained controlled substances, and the defendant was charged with illegal possession of controlled substances. The Illinois courts suppressed the results of the search of the defendant's shoulder bag. The United States Supreme Court held, however, "that it is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures." Id., 648. In a footnote to this holding, the Supreme Court stated: "The record is unclear as to

---

[9] In this case the trial court held that *Illinois* v. *Lafayette,* 462 U.S. 640, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983), did not apply because the defendant's bag was in Carson's possession when it was brought into police headquarters, whereas in *Lafayette* the defendant's bag was on his shoulder when he was brought under arrest into the police station. Our conclusion, however, that the state failed to establish that the defendant was to be incarcerated and thus failed to establish a valid stationhouse inventory search, renders it unnecessary for us to decide whether that is a viable distinction.

whether respondent was to have been incarcerated after being booked for disturbing the peace. That is an appropriate inquiry on remand." Id., 648 n.3.

This footnote underscored the court's emphasis, present throughout the opinion, on the factor of the contemplated incarceration of the arrestee as a foundation for its holding. The court formulated the question posed by the case as "whether, consistent with the Fourth Amendment, it is reasonable for police to search the personal effects of a person under lawful arrest as part of the routine administrative procedure at a police station incident to booking *and jailing* the suspect." (Emphasis added.) Id., 643; see also id., 644 ("[i]n order to see an inventory search in proper perspective, it is necessary to study the evolution of interest along the continuum from arrest *to incarceration*") (emphasis added), 645 ("if an arrestee is taken to the police station, that is no more than a continuation of the custody inherent in the arrest status. Nonetheless, the factors justifying a search of the person and personal effects of an arrestee upon reaching a police station *but prior to being placed in confinement* are somewhat different from the factors justifying an immediate search at the time and place of arrest") (emphasis added) and 646 ("[a]t the station house, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person *who is to be jailed*"). (Emphasis added.)

The state's argument founders on this factor, because this record is bereft of any evidence that when the defendant was brought to police headquarters, he was to have been incarcerated. The only evidence was that he was taken there to be "booked" for operating a motor vehicle while his license was under suspension.[10]

---

[10] The record discloses the following colloquy:

"Officer Carson: . . . I took custody of a tote bag because we [were] going to tow the vehicle that belonged to the defendant; and I transported

There is no elaboration in this record of what "booked" meant in this context, or whether it involved even temporary incarceration. The record fails to establish, for example, whether the defendant was to be photographed or fingerprinted, whether a bond would be set or whether he would ordinarily be released on a promise to appear, on his own recognizance or on some other noncustodial security, or whether he would ordinarily be incarcerated, even briefly, until these determinations were made. Nor can we assume that an arrest for operating under suspension normally carries such a consequence. Practice Book § 1004 provides for issuance of a summons and complaint followed by release without bail on his promise to appear, at the discretion of the officer. Thus, this record does not foreclose the likelihood that, when the defendant was arrested and taken to the stationhouse, no incarceration was contemplated and that, after being "booked," and after the issuance of the summons and complaint, he would have been released without bail on his promise to appear.

The state had the burden to establish that this search came within the inventory exception to the warrant requirement. *State* v. *Badgett,* supra, 431. That burden involved producing evidence of the factual foundation

---

him to Troop E in Montville, which is the procedure for operating under suspension. A $150 bond is required.

"[Defense Counsel]: Your Honor, I'm going to object to any reference to procedure unless the procedure is, in fact, brought into this courtroom. That's hearsay. In other words, the officer can testify to what he did when he talks in reference to a procedure—

"The Court: I don't see where it's relevant."

"[Assistant State's Attorney]: I'll withdraw the question regarding the procedures.

"The Court: You took him to the department to book him for operating under suspension.

"The Witness: Yes, Your Honor.

"The Court: Very well."

Thus, the state acquiesced in the objection to Carson's testimony regarding the procedure and the bond. We, therefore, are required, as was the trial court, to disregard it.

for that exception; see id.; which in this case necessarily involved evidence that the defendant was to be incarcerated. *Illinois* v. *Lafayette,* supra. The state did not meet its burden.

## II

### GOOD FAITH RELIANCE ON WRITTEN POLICE GUIDELINES

The state next argues that, even if the search was not a valid inventory search, Carson acted in good faith reliance on written state police guidelines and that, therefore, the exclusionary rule should not apply. We decline to consider this claim because the state did not raise it in any way in the trial court, and a brief analysis discloses that it does not qualify for "plain error" review under Practice Book § 4185.

The state relies principally on *Illinois* v. *Krull,* 480 U.S. 340, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987), in which the United States Supreme Court held that the good faith exception to the exclusionary rule applied "when officers act in objectively reasonable reliance on a statute authorizing warrantless administrative searches, but where the statute is ultimately found to violate the Fourth Amendment." Id., 342. The state's reliance on *Krull,* however, is an attempt to erect a theoretical structure in this court without first laying its factual foundation in the trial court.

Unlike *Krull,* where the court had the benefit of the full statutory scheme on which the officers relied, in this case, the state did not introduce the written state police guidelines on which Carson purported to rely.[11] Under *Krull,* "the standard of reasonableness . . . is an objective one; the standard does not turn on the sub-

---

[11] The only evidence on this issue was Carson's testimony that "the State Police [direct] us to inventory all personal items on any accused person brought into the police station . . . and [to] take custody of same."

jective good faith of individual officers." Id., 354. Thus, even if we assume without deciding that reliance on written police guidelines could be equivalent to reliance on a statute; but see *Illinois* v. *Krull,* supra, 360 n.17; the determination of whether that reliance was objectively reasonable would require, inter alia, an examination of the text of the guidelines. Under these circumstances, what we said in *State* v. *Martin,* 2 Conn. App. 605, 612B, 482 A.2d 70 (1984), cert. denied, 195 Conn. 802, 488 A.2d 457, cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985), applies here: "The rule that claims on appeal should first be made at trial . . . applies to the state as well as to the defendant."

## III

### SEARCH INCIDENT TO A VALID ARREST

The state's final claim is that the stationhouse search of the defendant's bag was valid as a search incident to his arrest. We decline to consider this claim because, like the claim of good faith reliance on police guidelines, it was not made in the trial court and a brief analysis discloses no plain error.

It is true that, had Carson searched the bag when he arrested the defendant on the highway, such a search would have come within a recognized exception to the warrant requirement, namely, a search incident to a valid custodial arrest of an occupant of a car; *New York* v. *Belton,* 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981); *State* v. *Dukes,* 209 Conn. 98, 104, 547 A.2d 10 (1988); *State* v. *Badgett,* supra, 426–27; and suppression of the results of such a search would have been plainly erroneous.

The rationale for this exception is the "generalization that the interior of a car is always within the immediate control of an arrestee who has recently been in

the car." Id., 426. The authority of the police to make a warrantless search of a car and the contents of its interior incident to the arrest of an occupant has limits, however. It does not extend to searches removed in time or place from the arrest, because under those circumstances the rationale for that exception to the warrant requirement simply does not apply. *Cardwell* v. *Lewis,* 417 U.S. 583, 591–92, 94 S. Ct. 2464, 41 L. Ed. 2d 325 (1974); *United States* v. *Monclavo-Cruz,* 662 F.2d 1285, 1287–88 (9th Cir. 1981).

In this case, although the seizure of the bag took place contemporaneously with the arrest, its search—which constituted the principal invasion of the defendant's privacy interest—did not take place until some time later at police headquarters. Under analogous circumstances, our Supreme Court has refused to extend the fiction that the passenger compartment of a car is within the reach of an arrestee who has already been transported from the arrest site. *State* v. *Badgett,* supra, 427. We can hardly find plain error in a determination that a bag seized from a car at the time of an arrest on the highway does not remain within the arrestee's reach so as to permit its later search at police headquarters.

There is no error.

In this opinion the other judges concurred.