**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Carl SCOTT, Defendant-Appellant.**

**No. 81–1080.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 10, 1981.

Decided Nov. 23, 1981.*

Alan M. Zarky, Los Angeles, Cal., for defendant-appellant.

Richard B. Kendall, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

* Lodged with clerk's office November 5, 1981.

Before WRIGHT and WALLACE, Circuit Judges, and CARROLL,** District Judge.

WALLACE, Circuit Judge:

Scott was convicted of receiving stolen property of the United States in violation of 18 U.S.C. § 641. On appeal Scott claims that the district judge erred in denying his motion to suppress evidence removed from his vehicle pursuant to police measures to protect his car and its contents following his arrest. We affirm.

I

Los Angeles Police Department (LAPD) Motorcycle Police Officer Elms stopped a 1961 Cadillac driven by Scott because the vehicle showed expired registration tags. Scott exited the automobile and handed Elms an identification card bearing his picture and the name Cornelious Green. Scott identified himself as Cornelious Green and told Elms that the automobile was registered to his brother, Robert Green. Scott searched for the registration in the automobile but could not find it. As he did so, Elms stood near him and saw an envelope apparently containing a treasury check lying on the front floorboards along with other mail.

Elms then inquired by radio and discovered that an individual named Cornelious Green was wanted for an outstanding misdemeanor arrest warrant. Elms advised Scott that he would be arrested and that the automobile could not be released to him. As it turned out, the car could not be released to Scott's adult passenger as he was wanted on an outstanding felony arrest warrant. Elms also issued Scott a citation for driving without a current registration. Scott signed the citation with the name Cornelious Green.

Elms asked Scott whether the police should impound his vehicle or leave it legally parked at the scene of the arrest. Scott chose to leave the automobile legally parked and stated that he would arrange to have

someone pick it up. Elms told Scott that he would make the automobile secure by closing the windows and locking the doors. By this time, LAPD Officer Dear had arrived with a patrol car and took Scott and his passenger to the police station. Elms then attempted to secure the car. He discovered that he could not lock all the doors and that the windows would not close because the power windows were inoperable.

Elms then inventoried the valuables located in plain view within the car. Among these valuables was the treasury check that Elms had previously noticed on the floorboards. Elms took the treasury check from the automobile for safekeeping, intending to place it with Scott's other personal property at the police station. Elms observed that the payee on the treasury check was Cornelious Green, the name by which Scott had identified himself verbally and with an identification card. Thus, at the time Elms took the check, he had no reason to believe that the true payee of the check was someone other than the driver of the vehicle. The check was issued for $2,618.00.

Elms testified that he followed standard police policy in removing the check from the vehicle for safekeeping. The pertinent LAPD regulation provides:

*Property In A Vehicle To Be Impounded or Left Parked.*

When a vehicle is impounded or left legally parked at the scene of a police investigation, the following items shall be removed and booked in accordance with established procedures:

. . . .

All monies found, whether in plain sight or as a result of a legal search.

Manual of the Los Angeles Police Department, ¶ 222.60 (February 1980).

After Elms arrived at the police station with the treasury check, he learned for the first time that Scott had admitted his true name and that he was not Cornelious Green. This information, along with the

** Honorable Earl H. Carroll, United States District Judge, District of Arizona, sitting by designation.

treasury check payable to Cornelious Green taken from Scott's car, ultimately led to Scott's indictment. When postal inspectors subsequently interviewed Scott, he made incriminating statements concerning his receipt of the treasury check and his intention to cash it.

## II

We must decide whether Elms violated the Fourth Amendment when, pursuant to police regulations, he entered Scott's legally parked vehicle following Scott's arrest to make it secure, and removed for safekeeping a clearly visible valuable item. The Supreme Court has held that " 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978), *quoting Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). *See also United States v. Emens*, 649 F.2d 653, 657 (9th Cir. 1980). The entry and search of Scott's car were conducted without a warrant. To uphold the admission of evidence discovered during the search, we must find that it falls within an established exception to the general rule.

■ We hold that the search of Scott's car falls within the principle of the exception articulated by the Supreme Court in *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (*Opperman*), which upheld the inventory search of an impounded vehicle. Although Scott's car was not impounded and inventoried, it is clear that the police were acting with the intent to secure the automobile and its contents after Scott had chosen not to have the automobile impounded. *See Opperman, supra*, 428 U.S. at 369, 96 S.Ct. at 3097. Furthermore, application of *Opperman's* reasoning to the instant case demonstrates that the police officer's actions did not abridge Scott's Fourth Amendment rights.

In *Opperman*, the Court observed that no measurable purpose could be achieved by imposing the warrant requirement in the circumstances of an inventory search. The Court stated:

> In analyzing the issue of reasonableness *vel non*, the courts have not sought to determine whether a protective inventory was justified by "probable cause." The standard of probable cause is peculiarly related to criminal investigations, not routine, noncriminal procedures. The probable-cause approach is unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions, particularly when no claim is made that the protective procedures are a subterfuge for criminal investigations.
>
> In view of the noncriminal context of inventory searches, and the inapplicability in such a setting of the requirement of probable cause, courts have held—and quite correctly—that search warrants are not required, linked as the warrant requirement textually is to the probable-cause concept. We have frequently observed that the warrant requirement assures that legal inferences and conclusions as to probable cause will be drawn by a neutral magistrate unrelated to the criminal investigative-enforcement process. With respect to noninvestigative police inventories of automobiles lawfully within governmental custody, however, the policies underlying the warrant requirement . . . are inapplicable.

*Opperman, supra*, 428 U.S. at 370 n.5, 96 S.Ct. at 3097 (citations omitted).

■ The procedures followed by Elms, who entered Scott's automobile and removed the check, like those of an inventory search, are unrelated to the criminal investigative-enforcement process. We therefore conclude that neither the absence of a warrant nor the absence of probable cause makes those procedures in and of themselves a violation of the Fourth Amendment prohibition against unreasonable searches and seizures.

After addressing the warrant and probable cause issues in *Opperman*, the Supreme Court turned, as we must, to the overriding

question of reasonableness. The Court determined that the inventory search was reasonable because it responded to three legitimate needs: "the protection of the owner's property while it remains in police custody . . . the protection of the police against claims or disputes over lost or stolen property . . . and the protection of the police from potential danger." *Opperman, supra*, 428 U.S. at 369, 96 S.Ct. at 3097. The Court found that the police followed "standard police procedures" in conducting the inventory search, *id.* at 376, 96 S.Ct. at 3100, a factor that tends to limit the scope of the intrusion "to the extent necessary to carry out [a] caretaking function," *id.* at 375, 96 S.Ct. at 3100, and to prevent arbitrary police conduct.

The steps taken by Elms, like those in *Opperman*, were in response to legitimate needs. Although Scott's car was legally parked, Scott's arrest by the police had left his property unsecured. Even though the car was not in police custody and even though the police may have had no duty to secure Scott's belongings, the police procedures to protect the arrestee's belongings were appropriate caretaking functions. This is especially true here where Elms had assured Scott that he would lock his vehicle. Furthermore, the procedures protected the police against charges of dishonesty or negligence that might have arisen had the arrestee's property disappeared. The intrusions necessary to secure Scott's property were therefore reasonable. *See United States v. Prazak*, 500 F.2d 1216 (9th Cir. 1974).

We also conclude that Elms followed "standard police procedures" when he entered the car and removed the treasury check. LAPD regulations require police officers to remove "monies found" in a vehicle left legally parked at the scene of a police investigation. We conclude that, because of the check's negotiable character, Elms acted within police regulations when he treated it in the same manner as cash.

Scott does not argue that the safekeeping purpose was merely pretextual. The facts indicate that Elms had no reason to believe that Scott was not the named payee on the check when he removed it from the automobile.

We therefore conclude that the police acted reasonably and legitimately in entering Scott's car and removing the check for safekeeping. No violation of Scott's Fourth Amendment rights occurred.

AFFIRMED.