STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Pamela L. WEIDE, Defendant-Appellant.

Supreme Court

*No. 89-0331-CR. Argued April 25, 1990.—Decided June 6, 1990.*

(Also reported in 455 N.W.2d 899.)

For the plaintiff-respondent-petitioner the cause was argued by *Barry M. Levenson,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the defendant-appellant there was a brief by *Steven J. Luchsinger,* Watertown, and oral argument by *Steven J. Luchsinger.*

CALLOW, WILLIAM G., J. This is a review of an unpublished decision of the court of appeals reversing a judgment of conviction of the circuit court for Jefferson County, Judge John B. Danforth. The primary issue before this court is whether, under the circumstances of this case, it was unreasonable, and thus a violation of the Fourth Amendment to the United States Constitution and Article I, sec. 11 of the Wisconsin Constitution, for two officers of the Jefferson County Sheriff's Department (the Department) to inventory the contents of the purse of the defendant, Pamela L. Weide (Weide), after the purse was found on the backseat of the squad car of one of the officers. We conclude that the conduct of the officers was reasonable and thus consistent with the fourth amendment and Article I, sec. 11.

The facts and the procedural posture of this case can be briefly stated. On December 30, 1987, Deputy Tom Rue (Rue) of the Department transported Weide and a companion to Weide's home in his squad car after Weide's vehicle became disabled. Shortly after arriving at her home, Weide realized that she had left her purse on the backseat of Rue's squad car. Weide therefore called the police dispatcher, who instructed Rue to bring Weide's purse to the Waterloo Police Department, if he found it. Rue found a purse on the backseat of his squad car but, before taking the purse to the Waterloo Police Department, Rue met another officer, Deputy Tim Mad-

sen (Madsen), in a parking lot. Together, they began to inventory the contents of the purse. During the inventory, they found a vial containing what was later determined to be cocaine.

Weide was charged with knowingly and unlawfully possessing a controlled substance (cocaine), contrary to secs. 161.16(2)(b)1 and 161.41(3), Stats. Subsequently, Weide moved to suppress for use as evidence all articles obtained by police during the inventory of her purse. Weide's motion to suppress was based upon the Fourth and Fourteenth Amendments to the United States Constitution, Article I, sec. 11 of the Wisconsin Constitution, and Chapter 968 of the Wisconsin Statutes.

At the hearing on Weide's motion to suppress, Rue was the only witness who was called. Rue testified that he wrote on a piece of paper Madsen's recitation of the contents of the purse. Rue further testified that the inventory was not completed at that time; the inventory ceased when the contraband was found. Rue stated that the inventory search of Weide's purse was conducted pursuant to the Department's unwritten policy of inventorying the contents of a lost or stolen item that the Department subsequently finds or locates. According to Rue, the purpose of the inventory search policy is to protect the Department from claims of loss or theft. When an inventory is conducted, Rue testified, the practice is to have another officer present.

The circuit court denied Weide's motion to suppress. The circuit court concluded that the officers' inventory served to prevent Weide from claiming in the future that something was missing from the purse.[1] After the motion to suppress was denied, Weide pled guilty to

---

[1]The circuit court also concluded that it was necessary to open the purse for identification purposes.

the charge. Weide was placed on probation for one year and was fined $250.00.

Weide appealed from the judgment of conviction entered on January 27, 1989. The court of appeals reversed.[2] The court of appeals noted that, with respect to the reasonableness of inventory searches of purses and other containers under the Fourth Amendment to the United States Constitution, this court's decision in *State v. Prober,* 98 Wis. 2d 345, 297 N.W.2d 1 (1980), was "arguably inconsistent" with the subsequent decisions of the United States Supreme Court in *Colorado v. Bertine,* 479 U.S. 367 (1987), and *Illinois v. Lafayette,* 462 U.S. 640 (1983). The court of appeals chose to follow this court's decision in *Prober.* According to the court of appeals, following *Prober* was appropriate because the court of appeals is primarily an "error-correcting" court and because the court of appeals is bound by Wisconsin Supreme Court decisions. The court of appeals reasoned that it is the role of this court to determine whether one of its decisions is valid in light of an intervening decision of the United States Supreme Court. After discussing this court's decision in *Prober,* the court of appeals determined that *Prober* compelled the conclusion that the inventory search of Weide's purse was unreasonable and therefore violated the Fourth Amendment to the United States Constitution and Article I, sec. 11 of the Wisconsin Constitution. This court granted the State's petition for review.

In this court, the State argues that the court of appeals, having recognized an inconsistency between *Prober* and *Bertine,* should have followed *Bertine* in accordance with the cases in which this court has held

---

[2]Weide's appeal was from a misdemeanor conviction. Therefore, the appeal was decided by one court of appeals judge. Section 752.31, Stats.

that it will conform the law of search and seizure in Wisconsin to the fourth amendment decisions of the United States Supreme Court. In addition, the State urges this court to overrule *Prober* in light of *Bertine* and to uphold the inventory of Weide's purse as a reasonable inventory search under *Bertine.*[3] Our analysis thus begins with a discussion of this court's decision in *Prober* and the decision of the United States Supreme Court in *Bertine.*

In *Prober,* after the defendant was arrested, a police officer inventoried the defendant's car, examining the car's interior and trunk, and the contents of a purse located inside the trunk. The officer had not obtained a warrant. Heroin was found inside the purse. At the suppression hearing, the officer testified that the search was conducted pursuant to the police department's regulations. Those regulations required an inventory of any valuables found in a suspect's car when the suspect was taken into custody and were designed to protect the suspect's property against loss. *Prober,* 98 Wis. 2d at 348-49.

In this court, the state argued that the warrantless search of the locked trunk of the car and of the purse found inside the trunk was a constitutionally permissible inventory search. Quoting the decision of the United States Supreme Court in *South Dakota v. Opperman,* 428 U.S. 364 (1976), this court noted that inventory searches serve three vital functions: protecting the owner's property while it is in police custody; protecting the police department from claims that the property was

---

[3]In her brief in this court, Weide argues that any purported conflict between *Prober* and *Bertine* is irrelevant here because the search of her purse does not qualify as a proper inventory search. Weide's argument that there was no inventory search in this case will be addressed in a subsequent portion of this opinion.

lost or stolen while it was in police custody; and protecting the police from harm. *Prober,* 98 Wis. 2d at 352. This court concluded that the car's locked trunk was within the permissible scope of an otherwise valid inventory search. *Id.* at 355.

However, this court determined that opening the purse to search its contents exceeded the permissible scope of an otherwise valid inventory search. In determining that it was improper to open the purse and to search its contents, this court balanced the need of the police department to conduct the inventory against the right of a member of the public to be free from warrantless intrusions into personal effects, concluding as follows:

> The balance tips in favor of the privacy of personal effects because the purpose of an inventory can be adequately served by inventorying a container as a closed unit. It is thereby secured from theft, and exposure to claims of loss is reduced. Therefore, in conducting an inventory search of a vehicle, police officials may not open or search the contents of closed containers which could alternatively be removed from the vehicle and inventoried as an unit.

*Id.* at 356 (footnote and citation omitted). *See also State v. McDougal,* 68 Wis. 2d 399, 412-13, 228 N.W.2d 671 (1975).

*Bertine,* a decision of the United States Supreme Court, was decided seven years after *Prober. Bertine* and *Prober* are virtually indistinguishable on their facts. In *Bertine,* the defendant was arrested and, after the defendant was taken into custody, a police officer inventoried the contents of the defendant's van. The officer came across a closed backpack, which he opened, discovering

controlled substances, cocaine paraphernalia, and a large amount of cash. *Bertine,* 479 U.S. at 368–69.

The defendant argued that the evidence found during the inventory search was suppressible because "the search of the closed backpack and containers exceeded the permissible scope of such a search under the Fourth Amendment." *Id.* at 369. The Court rejected this argument. The Court began its discussion by noting that inventory searches are an exception to the warrant requirement of the fourth amendment.[4] Moreover, the Court cited its decisions in *Opperman* and *Lafayette* for the three strong governmental interests served by inventory searches:

> [I]nventory procedures serve to protect an owner's property while it is in the custody of police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.

*Id.* at 372.

In determining that the officer's actions in opening the defendant's closed backpack were reasonable under the fourth amendment, the Court emphasized that the officer was following standardized department proce-

---

[4]The Court explained why the inventory search is an exception to the warrant requirement:

The policies behind the warrant requirement are not implicated in an inventory search, *Opperman,* 428 U.S., at 370, n.5, nor is the related concept of probable cause:

"The standard of probable cause is peculiarly related to criminal investigations, not routine, noncriminal procedures . . .. The probable-cause approach is unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions, particularly when no claim is made that the protective procedures are a subterfuge for criminal investigations." *Ibid.*

*Bertine,* 479 U.S. at 371.

dures requiring the opening of closed containers and the listing of their contents. *Id.* at 372, 374 n.6. The Court further emphasized that there was no evidence that the officer who conducted the inventory "acted in bad faith or for the sole purpose of investigation." *Id.* at 372. The Court finally noted that the inventory of the contents of the backpack furthered the strong governmental interests that justified the inventory searches in *Opperman* and *Lafayette:* knowing the exact contents of the backpack protected the police from claims of theft, vandalism, or negligence; protected the police from harm; and protected the property from unauthorized interference. *Id.* at 372-73. The Court concluded that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." *Id.* at 374 (footnote omitted). *See also Lafayette,* 462 U.S. at 648 ("[I]t is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures."); *United States v. Arango-Correa,* 851 F.2d 54, 59 (2d Cir. 1988) ("An inventory search pursuant to standardized procedures will be upheld unless there is a showing that the government acted in bad faith or searched the car for the sole purpose of investigation.").

The foregoing discussion shows that, when faced with similar facts, this court in *Prober* and the United States Supreme Court in *Bertine* (and *Lafayette)* reached conflicting conclusions. In *Prober,* this court concluded that police may not search the contents of closed containers found during inventory searches if the police could have followed the less-intrusive course of

inventorying the containers as closed units. In *Bertine,* however, the United States Supreme Court ruled that it may be reasonable for the police to inventory the contents of closed containers found during inventory searches, even if a less intrusive means is available, as long as standard procedures mandate the opening of such containers and the standard procedures are administered in good faith.

It is evident that, after *Bertine,* to the extent that *Prober* holds that police may not inventory the contents of closed containers discovered during otherwise valid inventory searches, when standardized department procedures mandate the opening of such containers, that holding has no remaining vitality. In determining the scope of the protection afforded by the Fourth Amendment to the United States Constitution, this court must follow the fourth amendment decisions of the United States Supreme Court. *See State v. Pitsch,* 124 Wis. 2d 628, 632, 369 N.W.2d 711 (1985). Moreover, "[t]his court has consistently and routinely conformed the law of search and seizure under the state constitution to that developed by the United States Supreme Court under the fourth amendment." *State v. Fry,* 131 Wis. 2d 153, 172, 388 N.W.2d 565, *cert. denied,* 479 U.S. 989 (1986).[5]

---

[5]In *Fry,* we noted one reason behind our refusal to interpret Wisconsin's search and seizure provision differently than the United States Supreme Court has interpreted the fourth amendment:

> One reason this court has refused to interpret Wisconsin's search and seizure provision differently than the Supreme Court has interpreted the fourth amendment is to prevent the confusion caused by differing standards. We said in *Conrad v. State,* 63 Wis. 2d 616, 634, 218 N.W.2d 252 (1974), that search and seizure law is marked by hairsplitting distinctions and a complexity masked by simple formulations. It is obvious that police officers must often find it confusing as

Although we may interpret Article I, sec. 11 of the Wisconsin Constitution differently than the Supreme Court has interpreted the Fourth Amendment to the United States Constitution, we decline to do so here. In light of *Bertine,* therefore, *Prober* is no longer a correct interpretation of state or federal constitutional law, and we overrule *Prober* to the extent that it conflicts with *Bertine.*

Weide seeks to distinguish *Bertine* and other cases involving proper inventory searches from the case at hand, arguing that the search of her purse lacked two requirements of a proper inventory search: first, at the time of the search, neither had Weide been arrested or placed in police custody, nor had her vehicle been impounded; second, no written standardized or routine procedures of the Department governed the inventory. Weide notes that these two factors were present in *Bertine* and in other inventory search cases. Weide concludes that the search of her purse does not qualify as an inventory search, does not fall within any other exception to the warrant requirement, and was unreasonable in violation of Article I, sec. 11 of the Wisconsin Constitution and the Fourth Amendment to the United States Constitution.

██

We reject Weide's argument that a prerequisite to a proper inventory search is the impoundment of the defendant's vehicle or some form of police custody of the defendant. As Professor LaFave has noted, other courts

---

they enforce the law and investigate crime. Thus, we are reluctant to construe our state constitutional provision differently than the fourth amendment, especially since the two provisions are intended to protect the same interests and we are unconvinced that the Supreme Court provides less protection than intended by the search and seizure provision of the Wisconsin Constitution.

*Fry,* 131 Wis. 2d at 173–74.

have found inventory searches of closed containers proper even though the searches were not accompanied by the defendant's arrest:

> Lower courts have quite consistently held that whenever the defendant's suitcase or some other similar container was properly impounded by the police at the time of his arrest, or *otherwise lawfully came into the custody of the police,* an item-by-item inventory of its contents at the station is permissible.

2 LaFave, *Search and Seizure,* sec. 5.5(b) at 539–40 (emphasis added) (footnotes omitted). In this case, police came into lawful possession of Weide's purse after it was found on the backseat of Officer Rue's police vehicle.[6] It would be unreasonable, in light of the governmental interests served by inventory searches, to conclude that the police may inventory the contents of a container lawfully taken into custody in arrest or impoundment situations, but not when the container otherwise lawfully comes into the possession of police. The governmental interests served by inventory searches (protecting the property in police custody, protecting the police from claims of negligence or theft, and protecting the police from harm) are implicated whether the police lawfully come to possess a container after an arrest or impoundment, or whether, such as happened here, the container comes into police custody by some other lawful means. *See State v. O'Connell,* 726 S.W.2d 742, 748 (Mo. 1987) (Police locate and inventory property that the defendant had earlier reported stolen; inventory search serves the same governmental interests as in impound-

---

[6]For additional cases where a person's property has come into lawful police custody outside the context of the person's arrest or the impoundment of the person's vehicle, see 2 LaFave, *supra,* at 539 n.52.

ment or arrest cases.). *Cf. Bertine,* 479 U.S. at 373 (Noting that although the contexts in which two inventory searches occur may differ, the governmental interests served by the searches may be the same.).

We also reject Weide's argument that no standardized or routine procedures of the Department governed the inventory. Although it may be preferable, there is no rule of law that the policy or procedure governing the inventory search must be in writing. The cases, while stating that the inventory search must be carried out in accordance with standardized criteria, standard procedures or practice, or established routine, impose no requirement that the policy or procedure must be in writing. *See, e.g., Florida v. Wells,* 110 S. Ct. 1632 (1990); *Bertine,* 479 U.S. at 374 and n.6. *See also United States v. Kornegay,* 885 F.2d 713, 717 (10th Cir. 1989), *cert. denied,* 58 U.S.L.W. 3723 (1990) ("The record reflects no written regulation requiring [the inventory], but the testimony of [the officer] established that it is customary and standard practice when a vehicle is impounded.").[7] The policy or procedure governing the inventory search in this case is clear and sufficient. The suppression hearing transcript demonstrates that Department policy requires an inventory of the contents of a lost or stolen item that the Department subsequently finds or locates.[8]

---

[7]The existence of standardized criteria or an established routine "ensure[s] that the intrusion [is] limited in scope to the extent necessary to carry out the caretaking function," *Opperman,* 428 U.S. at 375, and that the search "will not be used as a purposeful and general means of discovering evidence." *Bertine,* 479 U.S. at 376 (Blackmun, J., concurring).

[8]Weide argues that, because the listing of the contents of her purse ceased when the contraband was found, the search must be

Having rejected Weide's attempts to distinguish *Bertine* (and other inventory search cases) from the case at hand on the grounds that no standard or routine Department procedures governed the inventory and that neither Weide nor her vehicle was in police custody at the time of the inventory, we now apply the principles announced in *Bertine* to the facts of this case. We conclude that the principles announced in *Bertine* compel the conclusion that opening Weide's purse to inventory its contents was reasonable under both the state and federal constitutions. Weide's purse was opened and searched pursuant to the Department's policy of inventorying the contents of a lost or stolen item that the Department subsequently finds or locates. The circuit court concluded that the search of the purse was for inventory purposes, and there is no evidence that the inventory search was a ruse for an investigatory search. Officer Rue testified at the suppression hearing that the purpose of the Department's inventory search policy is to protect the Department from claims of loss or theft. This purpose was identified by both *Bertine* and *Lafayette* as one of the governmental interests behind inventory searches. Moreover, those cases stated that inven-

---

deemed an investigatory search, not an inventory search. This argument has no merit. As the Virginia Supreme Court has noted, discontinuance of the inventory when contraband is found does not invalidate an otherwise valid inventory search:

> We hold that the evidence supports the trial court's finding that the contraband was discovered during the course of a legitimate inventory search. Interruption or discontinuance of the inventory search upon discovery of the drugs did not invalidate it retroactively. The discovery immediately changed the police function from mere custodial care to the prompt investigation of the felonies thereby revealed.

*Girardi v. Commonwealth,* 221 Va. 459, 270 S.E.2d 743, 747 (1980), *cert. denied,* 451 U.S. 913 (1981).

tory procedures are designed to protect the owner's property while in the custody of the police and to protect the police from harm.

We hold that the inventory search of Weide's purse was reasonable and thus consistent with both the Fourth Amendment to the United States Constitution and Article I, sec. 11 of the Wisconsin Constitution because it served the governmental interests inventory procedures are designed to protect and because it was a good faith inventory search that was conducted pursuant to established department policy.

*By the Court.*—The decision of the court of appeals is reversed.