804 P.2d 1059

**STATE of New Mexico, Petitioner,**

v.

**Douglas BOSWELL, Respondent.**

**No. 18922.**

Supreme Court of New Mexico.

Jan. 14, 1991.

Tom Udall, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for petitioner.

Marlowe & Marlowe, P.C., Daniel R. Marlowe, Taos, for respondent.

OPINION

BACA, Justice.

The state petitioned for a writ of certiorari to the court of appeals, which had held

that a search of respondent-defendant's wallet was unlawful and violated defendant's fourth amendment rights. 110 N.M. 190, 793 P.2d 1343. We granted the petition and reverse.

The pertinent facts are as follows. Defendant Boswell was apprehended and detained in a grocery store as a suspected shoplifter. The manager held him in an office while the police were summoned. An officer arrived, patted down defendant, and discovered evidence of shoplifting. The officer then asked for identification, which defendant produced from his wallet. Defendant, who was subsequently arrested and taken to the police station for booking, inadvertently left the wallet on a file cabinet. After being booked, he asked about the wallet, and it was determined that the wallet had been left at the store in the manager's office. The officer offered to retrieve the wallet, but defendant said that he would arrange for a friend to pick it up. The officer, however, insisted and returned to the store. He found the wallet on the file cabinet, searched it, and discovered a blotter with LSD. Defendant was charged with possession of controlled substances with intent to distribute. After the district court denied his motion to suppress, defendant entered a guilty plea, reserving his right to appeal the constitutional issue.

On appeal we determine whether the search violated defendant's fourth amendment rights. The state argues that, after a valid arrest, defendant did not have a reasonable expectation of privacy in the wallet, that because the wallet could have been searched at the time of arrest or at the station as a search incident to an arrest, the subsequent search was valid, and that the search was valid as a lawful inventory. Accordingly, it contends that the court of appeals erred when it ordered evidence of the contraband discovered as a result of the admittedly · warrantless search suppressed.

Defendant maintains the court of appeals properly determined that he had a continuing privacy interest in the wallet, that the search could not be justified as a search incident to an arrest, and that the search did not fall within the ambit of an inventory search.

We find that the officer properly conducted an inventory search of the wallet within constitutional limits as defined in *State v. Williams*, 97 N.M. 634, 642 P.2d 1093, *cert. denied*, 459 U.S. 845, 103 S.Ct. 101, 74 L.Ed.2d 91 (1982), *State v. Ruffino*, 94 N.M. 500, 612 P.2d 1311 (1980), *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), and *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), and we do not find it necessary to address the validity of the search as incident to a lawful arrest.

The court of appeals focused on the wallet not being on defendant's person when he was booked to resolve whether the police undertook a proper inventory search. The court recognized that an inventory search done in accordance with established police procedure appropriately may be performed to completely search an arrestee's property and person, but then found:

> The problem in this case is that the wallet was not on the defendant's person at the time he was booked. If the wallet had been in defendant's pocket at the time he was booked, it could have been properly searched pursuant to an inventory. Inventory, however, cannot be used as the reason to search the wallet when it was not part of the effects on his person at the time of booking. (Citations omitted.)

In *Williams*, 97 N.M. at 636, 642 P.2d at 1095, we set forth the requirements for a lawful inventory search: that the police have control or custody of the object of the search; that the inventory is made pursuant to established police regulations; and that the search is reasonable. *See Ruffino*, 94 N.M. 500, 612 P.2d 1311 (1980). In *Williams*, we also required that "there must be *some* nexus between the arrest and the reason for impounding, [although] that nexus need only be reasonable." 97 N.M. at 637, 642 P.2d at 1096. In this case the court of appeals held "that a reasonable nexus did not exist for the police officer to return to take custody of the wallet. There is no evidence the police officer sus-

pected that evidence of shoplifting was concealed in the mislaid wallet."

■ An individual has a reasonable expectation of privacy in a wallet, and, therefore, the search of the wallet implicates the fourth amendment. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Accordingly, for this search to have been lawful, it must fit within an exception, such as the inventory exception, making the search reasonable and therefore constitutionally permissible. Under the appropriate circumstances, a wallet lawfully may be searched in an inventory search. *See Lafayette*, 462 U.S. at 648, 103 S.Ct. at 2610 (holding "that it is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession"); *People v. Hovey*, 44 Cal.3d 543, 749 P.2d 776, 244 Cal.Rptr. 121 (contents of wallet properly searched during inventory), *cert. denied*, 488 U.S. 871, 109 S.Ct. 188, 102 L.Ed.2d 157 (1988); *see generally* Annotation, *Lawfulness of Warrantless Search of Purse or Wallet of Person Arrested or Suspected of Crime*, 29 A.L.R.4th 771, § 11 (1984). Defendant has not contested that the search was not conducted pursuant to regular police procedure.[1] *See Florida v. Wells*, ——

U.S. ——, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990) (inventory search must be conducted pursuant to standardized criteria or established routine designed to produce an inventory, although discretion allowed to police based on the concerns of the search). Moreover, the location of the search, in the store's office rather than the police station, does not invalidate it.[2] This case turns on the first prong of the test we articulated in *Williams*, 97 N.M. at 636, 642 P.2d at 1095: whether the police lawfully had custody of the wallet, i.e., was there a reasonable nexus between Boswell's arrest and the seizure of the wallet?

"A police inventory of some possession of the arrestee * * * presupposes that the police had some valid reason for taking custody of that object, for it is only because of such taking of custody that the police can be said to have some obligation to safeguard the contents." 2 W. Lafave, *Search and Seizure* § 5.5(b) (2d ed. 1987). Property found on the person or in the immediate possession of a lawful arrestee presents no seizure problem and may be inventoried. *Lafayette*, 462 U.S. at 646–47, 103 S.Ct. at 2609–10. Containers found in a lawfully-impounded vehicle properly may be inventoried. *Bertine*, 479 U.S. at 372–

---

1. In response to questioning at the suppression hearing, the officer indicated that his motive in retrieving the wallet was defendant's obvious concern that it not be lost. He testified that he believed that it contained items of value to defendant, and he did not want to risk the contents being lost or possible personal liability. The officer also testified that police procedure required him to inventory and secure personal property of an arrestee subsequent to arrest, emphasizing that all property and money must be accounted for in inventory. He indicated that the booking cards contain a space where money, specifically, is to be listed, and that customary procedure included a search through wallets for cash, including money potentially hidden in a wallet, to protect the department from unfounded accusations of theft. Although on cross-examination the officer admitted that the inventory listed only the wallet without reference to its contents, he explained that the wallet was searched specifically for money, and, because no cash was found in the wallet, it was not necessary to inventory the other contents.

2. Merely because the police officer conducted the search in the manager's office rather than at

the station house does not require suppression, as long as the search is conducted in accordance with appropriate procedures. We approved the search of an automobile conducted at the scene of impoundment in *State v. Williams*, 97 N.M. 634, 642 P.2d 1093, *cert. denied*, 459 U.S. 845, 103 S.Ct. 101, 74 L.Ed.2d 91 (1982). Similarly in *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), the United States Supreme Court upheld an inventory search of an automobile conducted at the scene of the seizure. *See id.* at 373, 107 S.Ct. at 742 ("Our opinion in *Lafayette*, however, did not suggest that the station-house setting of the inventory search was critical to our holding in that case. Both in the present case and in *Lafayette*, the common governmental interests [to guard against claims of theft, negligence, or vandalism] were served by the inventory searches."). *But see People v. Laiwa*, 34 Cal.3d 711, 669 P.2d 1278, 195 Cal.Rptr. 503 (1983) (in bank) (on state constitutional grounds, disallowing practice of "accelerated booking search" whereby arrestee subject to full search at scene of arrest).

73, 107 S.Ct. at 741–42. Generally the police are justified in seizing property if it cannot be left safely at the scene of the arrest. *See United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (reasonable for police to take items to station if person arrested in public place); *United States v. Grill,* 484 F.2d 990 (5th Cir.1973) (justifiable seizure of arrestee's suitcase on departing airplane), *cert. denied,* 416 U.S. 989, 94 S.Ct. 2396, 40 L.Ed.2d 767 (1974); *cf. United States v. Wright,* 706 F.Supp. 1268 (N.D.Tex.1989) (police seizure of suitcase impermissible and did not justify warrantless search when suitcase under locked guard by independent third party and thus no danger of theft or police liability for false claim).

An inventory is a reasonable search justified by the range of governmental interests that support it. An inventory protects a defendant's property in police custody from theft; conversely, it protects the police from accusations or false claims of theft of the property that was in an arrestee's possession. Moreover, the inventory prevents the introduction into the custodial setting of dangerous instrumentalities that may be concealed in innocent-looking articles. In other words, orderly police administration justifies examination and inventorying of items removed from an arrestee's possession or person. *Lafayette,* 462 U.S. at 647, 103 S.Ct. at 2610; *see Bertine,* 479 U.S. at 372, 107 S.Ct. at 741 (1987).

■ Contrary to the holding of the court of appeals, the lawfulness of an inventory search operates independently from any suspicion by the police of contraband that may be concealed in a container. Probable cause is not required to justify an inventory search. *Bertine,* 479 U.S. at 371–73, 107 S.Ct. at 741–42 (inventory not investigative tool and search reasonable because of legitimate caretaking interests); *South Dakota v. Opperman,* 428 U.S. 364, 370 n. 5, 96 S.Ct. 3092, 3097 n. 5, 49 L.Ed.2d 1000 (1976) ("probable-cause approach is unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions"). The state interests justifying an inventory constitute an independent basis for the reasonableness of the search.[3]

If the seizure is justified pursuant to an inventory theory, probable cause is irrelevant. The reasonable nexus between the arrest and seizure need not be based on probable cause, but can be based on "all the facts and circumstances of this case in light of [established fourth amendment] principles." *Id.* at 375, 96 S.Ct. at 3100. Those established principles include the reasonableness of a search of property in police custody for inventory purposes pursuant to established procedures.

The wallet, although on defendant's person at the time of arrest, was not in his possession immediately prior to his incarceration. However, the concerns underlying the reasonableness of an in-station inventory search justify the officer's return to the store to retrieve the wallet and its subsequent inventory. Boswell was arrested in the store manager's office, a place where he had no expectation of privacy or possessory interest. The wallet was left accidentally where it was not secure as an immediate result of the arrest. Accordingly, defendant risked the theft or loss of the wallet, and the police potentially were subject to accusations regarding the wallet, should it or its contents have been lost or stolen. The defendant asked to have a friend retrieve the wallet for him. This would not have removed the risk that intervening causes would result in the loss of the wallet, nor would it exculpate the police had it been lost. The officer was justifiably concerned that—as an immediate result of his investigation—the wallet would be lost and the department would be subject to liability. Simply because the officer initially was careless in safeguarding de-

---

**3.** In *Lafayette,* the Court discussed the rationale of an inventory search: "[a] so-called inventory search is not an independent legal concept but rather an incidental administrative step following arrest and preceding incarceration. To determine whether the search * * * was unreasonable we must 'balanc[e] its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'" 462 U.S. at 645, 103 S.Ct. at 2609 (quoting *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979)).

fendant's property does not remove his ongoing responsibility to insure that the property is secured. Leaving the wallet in the office, where defendant had no privacy interest or expectation of security and where any number of unknown individuals may have gained access to the wallet, subject to the friend possibly retrieving it at some future time, would be careless police procedure evincing a lack of concern for the defendant's belongings. This is not a situation where the property could have been safely left where it was,[4] nor was it a situation where custody of the property could have been safely and immediately entrusted to a friend or placed in a safe place.[5]

**4.** *See United States v. Lyons,* 706 F.2d 321 (D.C. Cir.1983) (arrestee had reasonable expectation of privacy in hotel room, and police seizure and inventory search of coat in closet unjustified).

**5.** *See Gaston v. State,* 155 Ga.App. 337, 270 S.E.2d 877 (1980) (following car accident, seizure of defendant's bag not justified when it had been left with willing bailee). *But see State v. Cole,* 674 P.2d 119 (Utah 1983) (defendant left knapsack with friend at time of arrest, but police retrieved it explaining all personal effects must accompany defendant to station; fruits of inventory search admissible because items still under police control); *State v. Weide,* 155 Wis.2d 537, 455 N.W.2d 899 (1990) (authorizing search of purse accidentally left in squad car where owner neither a suspect nor arrestee and owner called to claim purse immediately).

**6.** *Federal courts have adopted a similar rationale regarding inventory searches of vehicles seized after an arrest.* For example, in *United States v. Scott,* 665 F.2d 874 (9th Cir.1981), the defendant was arrested on an outstanding warrant after he was stopped for a traffic violation. The police officer asked the defendant whether he preferred to leave the vehicle legally parked at the scene or have it impounded; the defendant chose to leave it, with the proviso that a friend would pick it up. The officer subsequently tried to secure the vehicle and inventoried certain items found in the car. Although the car was never impounded, the court upheld the search as a valid police action to secure the vehicle. Addressing the overriding question of reasonableness, the court determined that the police actions were:

in response to legitimate needs. Although [defendant's] car was legally parked, [his] arrest by the police had left his property unsecured. Even though the car was not in police custody and even though the police may have had no duty to secure [defendant's] belongings, the police procedures to protect the arrestee's belongings were appropriate caretaking functions. * * * [T]he procedures protected the police against charges of dishonesty or negligence that might have arisen had the arrestee's property disappeared. The intrusions necessary to secure [defendant's] property were therefore reasonable. *Id.* at 877 (citation omitted).

*See also United States v. Griffin,* 729 F.2d 475 (7th Cir.) (valid exercise of caretaking function to impound vehicle rather than leave it parked at side of interstate highway, even though defendant asked to have a friend retrieve it, because of need to protect car from vandalism or theft), *cert. denied,* 469 U.S. 830, 105 S.Ct. 117, 83 L.Ed.2d 60 (1984); *United States v. Staller,* 616 F.2d 1284 (5th Cir.) (upholding search subsequent to police taking custody of defendant's legally-parked automobile as legitimate exercise of caretaking function because of risk to car parked overnight in mall lot), *cert. denied,* 449 U.S. 869, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980).

We previously upheld a similar seizure in *State v. Williams,* 97 N.M. 634, 642 P.2d 1093, *cert. denied,* 459 U.S. 845, 103 S.Ct. 101, 74 L.Ed.2d 91 (1982). In that case, the defendant was arrested during an armed robbery of a grocery. During booking, an officer found a set of keys; he returned to the crime scene and found defendant's car legally parked, whereupon he immediately conducted an inventory search.

In *Roose v. State,* 759 P.2d 478 (Wyo.1988), the Supreme Court of Wyoming found reasonable, on slightly different grounds, the police search of an arrestee's pants, which had been left at the scene of the arrest. The officers retrieved the trousers after removing the suspect from the scene and discovered contraband during an inventory search. The court determined that the scope of an inventory search "is not limited to items in the immediate control of the defendant. If the arrestee's access to the objects searched terminates between the time of

---

Thus, the government interests that make an inventory search reasonable (to safeguard the property from loss or theft, to protect the police from liability and false claims, and to protect the police from hidden dangers), under the facts and circumstances of this case, justified the officer's return to retrieve the wallet. The seizure was therefore reasonable—the reasonable nexus between the initial arrest and seizure is not found in a theory of probable cause to suspect the existence of contraband or evidence, nor necessarily on an incident to arrest theory, but in the need to safeguard defendant's property from loss and to protect the police from liability and charges of negligence.[6]

Accordingly, we hold that the police officer did not conduct a search in violation of the fourth amendment when he inventoried the contents of defendant's wallet. That search properly fell within the inventory exception and was justified by appropriate police concerns that defendant's property be secured. We reverse the judgment of the court of appeals and reinstate the judgment of the district court.

IT IS SO ORDERED.

RANSOM, MONTGOMERY and FRANCHINI, JJ., concur.

SOSA, C.J., dissents.

SOSA, Chief Justice (dissenting).

I cannot agree with the majority opinion and I agree with the Court of Appeals and hereby adopt the Court of Appeals Majority Opinion in toto as my dissent.

No. 10844.

Court of Appeals of New Mexico.

Nov. 16, 1989.

OPINION

BIVINS, Chief Judge.

Defendant pled guilty to the charge of attempt to commit the felony of possession of a controlled substance with intent to distribute, while reserving his right to appeal the denial of the motion to suppress evidence. From a judgment and sentence entered on the guilty plea, defendant appeals, raising one issue: whether the warrantless search and seizure of defendant's wallet, produced for the purpose of identification at the time of his arrest but left behind when he was taken to the police station for booking, violated his fourth amendment rights. We hold that it did and reverse and remand. Defendant raised one other issue in the docketing statement but did not argue it in his brief; it is therefore deemed abandoned. *State v. Fish*, 102 N.M. 775, 701 P.2d 374 (Ct.App.1985).

Apprehended in a grocery store for shoplifting, store personnel took defendant to the store manager's office. The personnel detained defendant in the office until a police officer arrived. In compliance with the officer's request for identification, defendant removed his driver's license from his wallet. The officer discovered evidence of shoplifting while conducting a pat-down search of defendant. The officer arrested defendant and transported him to the police station, where he was booked. Defendant inquired about his wallet, and it was determined that defendant had left it at the store manager's office. Defendant requested that he be allowed to make arrangements to have a friend pick up the wallet. The officer refused and returned to the store to retrieve it himself. Although recognizing the wallet immediately, the officer looked inside to make sure it belonged to defendant. After confirming that it did, the officer proceeded to search the wallet in order to inventory its contents. He found white cards, which tested positive for LSD.

The state charged defendant with attempt to commit the felony of possession with intent to distribute. The district court denied defendant's motion to suppress the evidence obtained from the search of his wallet. Defendant pled guilty and pursues this appeal to challenge that ruling.

Warrantless searches are permissible if they fall within one of the recognized exceptions to the warrant requirements. *See State v. Ruffino*, 94 N.M. 500, 612 P.2d 1311 (1980). The state argues that the search in this case falls within two of those exceptions: a search incident to arrest and an inventory search.

The search incident to arrest exception to the warrant requirement arose out of the possible danger that a person arrested might be concealing a weapon, or that evidence of the crime might be destroyed or concealed. It has been held reasonable for the arresting officer to conduct a warrantless search of the arrestee's person and the area within his immediate control in order to safeguard himself and others, and to prevent the loss of evidence. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). This search is confined

arrest and the time of the search, it is sufficient that the items were on his person or in his control at the time of arrest." *Id.* at 483.

to the area within the immediate control of the defendant. *See State v. Kaiser*, 91 N.M. 611, 577 P.2d 1257 (Ct.App.1978). The search must also be a contemporaneous incident of the arrest. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Thus, a search incident to an arrest must be promptly conducted.

Under the facts of this case, we do not believe that the search of defendant's wallet was incident to his lawful arrest for shoplifting. The search of the wallet was conducted after defendant had been arrested and taken to the police station. The wallet was no longer within his immediate control. There was no longer a reasonable fear that defendant would obtain a weapon from the wallet or seek to destroy or conceal evidence. *Cf. United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (search of a footlocker not justified as a search incident to an arrest where search was remote in time or place from the arrest and no exigency existed).

Furthermore, a period of time had elapsed between defendant's arrest and removal to the police station and the officer's return and search of the wallet. The state argues that if the wallet could legally be searched at the time defendant was arrested, then it could be searched later. The cases cited by the state do not support that argument. The cases are not truly search incident to arrest cases, but rely on inventory search analysis. In all of the cases cited by the state, the items searched were continuously within the control of either defendant or the police and were searched after defendant was in custody. *See, e.g., United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); *United States v. McEachern*, 675 F.2d 618 (4th Cir.1982). We do not agree with the state's argument that if the search would have been valid at the time of arrest, a later search was also valid. *Cf. State v. Billias*, 17 Conn.App. 635, 555 A.2d 448 (1989) (search of defendant's gym bag at station house could not be justified as a valid search incident to arrest, even though search might have fallen under exception had it been conducted when bag was seized from car at time of arrest on highway).

The state also argues that the search was proper as an inventory search. Inventory searches have been upheld as reasonable because they are done for the purposes of protecting the owner's property and protecting the police from subsequent claims of lost or stolen property, or potential danger. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *State v. Ruffino*. We agree that, once arrested and removed to the police station, an arrestee is subject, in accordance with established inventory procedures, to a complete search of his person and any property upon his person. *Illinois v. LaFayette*, 462 U.S. 640, 648, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65 (1983). The problem in this case is that the wallet was not on defendant's person at the time he was booked. If the wallet had been in defendant's pocket at the time he was booked, it could have been properly searched pursuant to an inventory. *See id.* Inventory, however, cannot be used as the reason to search the wallet when it was not part of the effects on his person at the time of booking. *See* discussion in 2 W. LaFave, *Search and Seizure* § 5.5(b), at 536 (2d ed. 1987) (police inventory of possession of arrestee presupposes that police had valid reason for taking custody of that object).

While New Mexico courts have not addressed the precise question presented in this appeal, one supreme court decision involving inventory of an automobile merits brief discussion. In *State v. Williams*, 97 N.M. 634, 642 P.2d 1093, *cert. denied*, 459 U.S. 845, 103 S.Ct. 101, 74 L.Ed.2d 91 (1982), the supreme court upheld an inventory search of a defendant's automobile, which had been left near the scene of the arrest. The court held that there are four requirements for a constitutional inventory search: (1) the vehicle to be inventoried is in police control or custody; (2) the inventory is made pursuant to established police regulations; (3) the search is reasonable; and (4) there is a reasonable nexus between the arrest and the reason for custody of the property. Even if the evidence supported the first three of these requirements, we hold that a reasonable nexus did

not exist for the police officer to return to take custody of the wallet. There is no evidence the police officer suspected that evidence of the crime of shoplifting was concealed in the mislaid wallet.

Although not argued by the parties, Judge Donnelly's separate dissenting opinion proposes the inevitable discovery rule would itself justify affirmance. We cannot properly consider theories not presented by the briefs or the pleadings. *In re Doe,* 98 N.M. 540, 650 P.2d 824 (1982); *State v. Thomson,* 79 N.M. 748, 449 P.2d 656 (1969). Nevertheless, we will address this point raised by the dissent. It posits that, since the wallet was in defendant's possession at the time of arrest and would inevitably have been discovered during a routine inventory search at the police station had defendant not left the wallet at the store, it was not improper for the officer to search the wallet when he returned to retrieve it at the store. We do not believe the inevitable discovery rule can be applied to the facts and circumstances of this case.

First, for the exception to apply, the prosecution must show by a preponderance of the evidence that the contraband would inevitably have been discovered by independent lawful means. *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). In order to make that showing, the state would have had to prove that the store owner ultimately would have found the wallet and turned it in to the police, and that the police would then have inventoried its contents. The state made no such showing. In fact, the unchallenged facts reflect that the wallet was discovered through defendant's inquiry at the police station during booking.

Second, we believe that the principal case relied on in the dissent, *United States v. Andrade,* 784 F.2d 1431 (9th Cir.1986), is distinguishable. In that case, the defendant's garment bag accompanied him to the police station; here, it was left behind. In *Andrade,* the police had a right, if not a responsibility, for their own protection, to search the bag as part of their inventory of the defendant's belongings. Here, in contrast, there was no such obligation. Once defendant requested that a friend pick up the wallet, the police had no further responsibility for its loss. We hold that the inevitable discovery rule could not apply to the facts of this case as a matter of law.

The search of defendant's wallet without a warrant is not supported by either exception argued by the state. Therefore, any evidence obtained pursuant to that search should have been suppressed. Defendant's conviction is reversed and the case is remanded for further proceedings. *See State v. Post,* 109 N.M. 177, 783 P.2d 487 (1989) (remand for trial rather than dismissal appropriate where evidence disallowed on appeal).

IT IS SO ORDERED.

MINZNER, J., concurs.

DONNELLY, J., dissents.*

---

* Judge Donnelly's dissent to the Court of Appeals opinion is published at 110 N.M. 190 at 194, 793 P.2d 1343 at 1347.