1999-NMCA-045

977 P.2d 352

**In the Matter of JEFF M., a Child.**

**No. 19223.**

Court of Appeals of New Mexico.

Jan. 28, 1999.

Certiorari Denied March 16, 1999.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, for Appellant.

Phyllis H. Subin, Chief Public Defender, Lisabeth L. Occhialino, Assistant Appellate Defender, Santa Fe, for Appellee.

*OPINION*

DONNELLY, Judge.

{1} The State appeals from an order granting the Child's motion to suppress evi-

dence seized by officers after the Child was taken into custody for speeding, being a minor in possession of alcohol, and operating a motor vehicle while his driver's license was suspended or revoked. The dispositive issue presented on appeal is whether the children's court erred in suppressing evidence of an alleged controlled substance discovered by law enforcement officers during an inventory search of the motor vehicle driven by the Child. For the reasons discussed herein, the cause is reversed and remanded for further proceedings.

*FACTS*

{2} The Child, Jeff M., was stopped by Sergeant Orlando Sanchez, a county sheriff's deputy in Rio Arriba County, New Mexico, on July 8, 1997, for allegedly driving eighty miles per hour on a portion of the highway with a maximum speed limit of sixty miles per hour. After the traffic stop, the deputy discovered that the Child was driving with a suspended or revoked driver's license and was a minor in possession of alcohol.

{3} Deputy Sanchez called for backup and Deputies Rudy Salazar and Richard Guillen responded to his call. Following the arrival of the additional officers, because the Child had been taken into custody and the pickup truck driven by him was about to be impounded, an inventory search of the vehicle was carried out by Deputies Salazar and Guillen. In the bed of the pickup, the officers found three cans of beer in an open cooler. During the inventory search, Deputy Salazar also found an ashtray that had been removed from its compartment and placed on the floor behind the passenger seat of the pickup truck. Inside the ashtray, in plain sight, was a piece of crumpled newspaper. The deputy opened the newspaper and found inside it what appeared to be marijuana.

{4} Following the filing of charges against the Child, the Child admitted speeding, being a minor in possession of alcohol, and operating a motor vehicle while his driver's license was suspended or revoked. The Child, however, denied possessing marijuana and filed a motion to suppress the evidence.

{5} The Child's motion to suppress stated that after he was stopped for speeding by a deputy sheriff, the officer "requested permission from the [Child] to search the vehicle which he had been driving [and][t]he [Child] granted the deputy permission to search the vehicle." The motion also stated that after the deputy .completed his search, two other deputies arrived at the scene and, at this point, the Child had been arrested and placed in the back seat of the patrol car. Additionally, the motion set forth that one of the deputy sheriffs then commenced a search of the Child's vehicle and "suspected marijuana was discovered under the seat of the vehicle."

{6} At the hearing on the motion to suppress, the State presented the testimony of Deputy Sanchez, who made the original stop of the Child for speeding, and the testimony of Deputies Guillen and Salazar, who arrived on the scene shortly after the stop.

{7} Sergeant Sanchez testified that he stopped the Child for speeding. After the stop, he found that the Child was driving on a suspended or revoked license, that the Child admitted he had been drinking, and that he had three cans of beer in his possession. Sanchez stated that he took the Child into custody and requested that the other deputies conduct an inventory search because the vehicle was going to be towed.

{8} Sergeant Sanchez stated that he did not conduct the inventory search of the Child's truck, but this was done by the other two deputies. He stated that an inventory sheet was filled out by Deputy Salazar, and that the search was done in accordance with standard operating procedures usually followed once the operator of a vehicle has been arrested. Sanchez stated that the purpose of conducting the inventory was to protect the Child's property and to protect from any claims against the officers.

{9} Deputies Guillen and Sanchez also testified at the hearing on the motion to suppress. Guillen stated that the inventory search was conducted in accordance with "standard practice" and that he and Deputy Salazar used an inventory sheet provided by the sheriffs office. He stated that the normal procedure was to check off any items of value. Deputy Salazar testified that while he was assisting in the inventory of the Child's

truck, he saw an ashtray behind the passenger seat with a rolled-up newspaper in it. He opened the paper and found what he thought was marijuana. After this discovery, he informed the other officers. He stated that the ashtray was in plain sight.[1] After the completion of the inventory, several acquaintances of the Child happened to drive by and stopped at the scene. They inquired if they could drive the Child's vehicle to the Child's home, rather than having it towed. Both the Child and the deputies agreed to this arrangement.

{10} At the conclusion of the hearing on the motion to suppress, the children's court granted the Child's motion.

*DISCUSSION*

{11} The order suppressing evidence entered by the children's court found in applicable part:

1. An inventory search of the [Child's] vehicle was conducted by law enforcement officers on July 8, 1997. There was no warrant.

2. During the search a law enforcement officer discovered a piece of newspaper in an ashtray. The officer then opened the piece of newspaper, suspecting that it contained marijuana. Suspected marijuana was found inside the newspaper.

{12} Based on its findings, the children's court concluded that "[i]t was lawful for the law enforcement officers to conduct an inventory search of the [Child's] vehicle." The court further concluded that "[t]he search was proceeding lawfully up to the point at which the law enforcement officer opened the piece of newspaper." The court found, however, that "[o]pening the piece of newspaper because the law enforcement officer believed that marijuana would be inside, as opposed to an object of value, exceeded the lawful bounds of an inventory search."

{13} The State argues on appeal that the children's court erroneously premised its ruling based upon the subjective state of mind of the deputy when he looked into the newspaper. In reviewing an order suppressing evidence, an appellate court determines whether the law was correctly applied to the facts, generally viewing the facts in the light most favorable to the successful party below. *See State v. Walker,* 1998–NMCA–117, ¶ 7, 125 N.M. 603, 964 P.2d 164.

{14} The constitutionally permissible purposes of an inventory search are to protect the owner's property, to protect the police from claims of loss or liability, and to guard the police from danger. *See South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *State v. Ruffino,* 94 N.M. 500, 502, 612 P.2d 1311, 1313 (1980); *see also State v. Johnson,* 1996–NMCA–117, ¶ 15, 122 N.M. 713, 930 P.2d 1165. In *State v. Boswell,* 111 N.M. 240, 804 P.2d 1059 (1991), Justice Baca, speaking for our Supreme Court, discussed the requirements for a lawful inventory search, noting that (1) the police must have control or custody of the object of the search, (2) the inventory must be carried out pursuant to established police regulations, and (3) the search must be reasonable. *See id.* at 241, 804 P.2d at 1060; *see also Ruffino,* 94 N.M. at 502, 612 P.2d at 1313. The *Boswell* Court also observed that the State must also show the existence of some nexus between the arrest and the reason for impounding the property subjected to the inventory search. *See Boswell,* 111 N.M. at 241, 804 P.2d at 1060. In addition, the inventory search must be conducted in good faith. *See Colorado v. Bertine,* 479 U.S. 367, 373–74, 107 S.Ct. 738, 741–42, 93 L.Ed.2d 739 (1987).

{15} Although inventory searches must be standardized, it is not compulsory that the procedures for such searches be written. *See State v. Wilson,* 116 N.M. 793, 798, 867 P.2d 1175, 1180 (1994) (adopting and approving proposed disposition of an appeal involving the lawfulness of an inventory search certified to Supreme Court by Court of Appeals).

{16} Even the opening of a closed container found in a vehicle during an inventory search does not per se constitute a basis

---

1. During the testimony of Deputy Salazar, the tape machine utilized by the children's court malfunctioned and a portion of the deputy's testimony was not recorded.

to preclude police inspection of the container's contents. *See State v. Shaw,* 115 N.M. 174, 177, 848 P.2d 1101, 1104 (Ct.App.1993) (police may search closed containers, so long as inventory search is done under clearly established procedures); *State v. Vigil,* 86 N.M. 388, 391, 524 P.2d 1004, 1007 (Ct.App. 1974) (where vehicle is lawfully in police custody "an inventory of the contents of closed containers is also justified"). In performing an inventory search, police, however, do not have a general license to carry out a detailed examination of "all the contents of . . . automobiles," such as a checkbook or installment loan book. *Opperman,* 428 U.S. at 380, 96 S.Ct. 3092 (Powell, J., concurring); *see also United States v. Khoury,* 901 F.2d 948, 957–60 (11th Cir.1990) (cursory inspection of spiral notebook during inventory search proper, but detailed examination of matters written therein held beyond the scope of an inventory search).

{17} In *Perry v. State,* 933 S.W.2d 249, 251 (Tex.Ct.App.1996), the court, in a case factually similar to the instant case, upheld the validity of a vehicle inventory search where police checked a partially opened ashtray for change and discovered a partially wrapped piece of white paper towel containing rocks of crack cocaine. The court held that the contents of the partially opened vehicle ashtray was not outside the scope of a proper automobile inventory. *See id.* at 253. Similarly, the court in *United States v. Ponce,* 8 F.3d 989, 995 (5th Cir.1993), held that heroin contained in small balloons placed in a plastic baggie and found in the ashtray of the truck was the subject of reasonable vehicle inventory search where police followed standardized procedures in conducting the search of the truck's ashtray. The court in *Ponce* found that the police acted properly in searching the ashtray because they "had

no way of knowing whether the owner of the truck used the ashtray to store personal items" and the ashtray was accessible to the towing company. *Id.* at 995.

{18} In *Florida v. Wells,* 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990), the United States Supreme Court affirmed suppression of evidence found in a locked suitcase in a vehicle's trunk. The Court in *Wells* upheld the suppression of the contents of the locked suitcase because there was no showing that the police department had a standardized policy with respect to opening closed containers.

{19} In the instant case, Deputy Guillen testified that the inventory search conducted in the Child's vehicle was conducted pursuant to "standard operating procedures," and that an inventory sheet was used. Deputies Sanchez and Guillen testified that the search was conducted for the purpose of safeguarding the contents of the vehicle and protecting the sheriffs office from claims of lost property. Guillen also testified that he had received field training on how to carry out and conduct inventory searches.

{20} The children's court's decision does not appear to be premised on a finding that the search was not made pursuant to established procedures; rather, the court specifically found that it was lawful for the deputies to conduct an inventory search of the Child's truck, up to the point at which one of the deputies opened the piece of newspaper. In announcing its oral decision, the children's court stated:

> I think [the deputies] had an obligation to tell me today in testimony that they believed that the reason they needed to open that [was] because there could have been some jewelry or some other valuable items that could have been placed in there.[2] But

2. During the pendency of this appeal, this Court *issued an order pursuant to Rule 12–211(H)* NMRA 1998, directing that the children's court reconstruct that portion of the transcript of proceedings relating to the testimony of Deputy Salazar which was not recorded.

The children's court responded in an order *entered September 25, 1998, finding that the* pertinent testimony of Deputy Salazar which was unavailable due to a tape recording malfunction was:

1. The purpose of an inventory search is to locate valuables.

2. It is procedure to write down any items that are found on an inventory sheet. This is for the protection of the officer, tow truck driver, and owner of the vehicle.

3. I saw a piece of newspaper in an ashtray behind the seat of the truck.

4. I thought the newspaper contained drugs and that concerned me, so I opened it.

5. Inside the newspaper was marijuana.

I think that's what's fatal to their, to their case, is testimony was that he thought it was drugs and that's why he opened it and that's not, that's not appropriate. So I'm going to grant the motion to suppress the marijuana, finding that the actual search was a proper search up until the point that [the deputy] got to the ashtray and he was unable to really articulate for me today what it looked like or why he felt he needed to open it except that it might be drugs.

{21} The validity of an inventory search, however, cannot be circumscribed by an officer's subjective belief while conducting such search, if the inventory search is otherwise in accordance with established procedures and the vehicle has been taken into police custody. *See United States v. Lewis,* 3 F.3d 252, 254 (8th Cir.1993) (inventory search of van held valid where defendant was arrested for driving with suspended driver's license and vehicle had been impounded, despite police officer's coexistent suspicion that incriminating evidence might be discovered therein); *see also People v. Hauseman,* 900 P.2d 74, 79 (Colo.1995) (en banc) (officer's subjective intent in carrying out arrest and resulting inventory not controlling); *cf. State v. Vargas,* 120 N.M. 416, 418, 902 P.2d 571, 573 (Ct.App.1995) (" '[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action as long as the circumstances, viewed objectively, justify that action.' " (quoting *Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978))).

{22} Defendant argues that the children's court properly suppressed the evidence found inside the folded newspaper because the newspaper was not shown to have been opened according to established police procedure. Thus, the central question posed by the Child's suppression motion was whether the inventory search of the contents of his truck was carried out pursuant to established police procedure.

{23} Our review of the record indicates that the order suppressing evidence did not indicate whether the children's court found the act of the deputy in opening the newspaper to be contrary to established police procedure. Instead, the record indicates that the expressed reason given by the court for granting the motion to suppress was improperly based on the reason given by Deputy Salazar for opening the newspaper. Thus, because the children's court's order of suppression appears to have been premised upon a mistake of law, we reverse the children's court's suppression order and remand for the adoption of additional findings of fact and conclusions of law concerning whether the opening of the folded newspaper was carried out in conformity with established police procedure.

*CONCLUSION*

{24} The cause is reversed and remanded for the adoption of additional findings of fact and conclusions of law, and for the entry of an amended order on the motion to suppress, consistent with the matters set forth herein.

{25} IT IS SO ORDERED.

APODACA and HARTZ, JJ., concur.