305 F.3d 1052
 Eleanor HENDERSON, Plaintiff-Appellant,
v.
CITY OF SIMI VALLEY; Randy Adams, Chief, individually and as the Chief; George Godfrey, Officer; May, Officer, Badge # 318; Samarin, Officer, Badge # 097, Defendants-Appellees.
 No. 01-55304.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 4, 2002.
 Filed September 24, 2002.
 
 COPYRIGHT MATERIAL OMITTED Earnest C.S. Bell, Ventura, CA, for the plaintiff-appellant.
 Martin R. Berman, Law Offices of James Aaron Pflaster, Los Angeles, CA, and David H. Hirsch, City Attorney for Simi Valley, Simi Valley, CA, for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California; Carlos R. Moreno, District Judge, Presiding. D.C. No. CV-00-02191-CRM.
 Before BROWNING, THOMAS and RAWLINSON, Circuit Judges.
 RAWLINSON, Circuit Judge.
 
 
 1
 It is a sad state of affairs when police officers must stand between a mother and her minor daughter to keep the peace. The aftermath of such a situation brings this case before us. We must decide whether the defendant police officers violated the mother's constitutional rights in their efforts to keep the peace, and whether they used excessive force in the process. We agree with the district court that the police officer's entry into the residence did not run afoul of the Fourth Amendment. The district court reached its conclusion on the Fourth Amendment issue by employing a general reasonableness analysis. We affirm on the alternate ground that the search, such as it was, was reasonable under the definitive special needs exception to the Fourth Amendment's warrant requirement. We also affirm the district court's grant of summary judgment in favor of defendants on Eleanor Henderson's excessive force claim.
 
 
 FACTUAL BACKGROUND
 
 
 2
 On August 10, 1999, pursuant to California's Domestic Violence Prevention Act ("DVPA"), Eleanor Henderson's former husband, Lantz Henderson, sought and received an Order to Show Cause and Temporary Restraining Order (the "Order"). See Cal. Fam.Code, § 6200 et seq. Among other things, the Order gave the Hendersons' minor daughter Suzanne "exclusive temporary use, control, and possession of ... all personal belongings, including (but not limited to) the items specified in the attached list." The attached list included a car, computer, stereo, television, specific items of furniture, and "[a]ll personal effects, clothing, jewelry, and miscellaneous things that were and have always been, or belonged solely and personally to the minor child, and were contained in the bedroom on [sic] the minor child at the time she left to go visit her father on July 29, 1999."
 
 
 3
 The day after the Order was entered, Suzanne requested that Officers Godfrey and Samarin of the Simi Valley Police Department escort her and stand by while she retrieved the property described in the Order. Upon arrival at the residence, the officers observed a pile of clothing outside the house.
 
 
 4
 Officer Godfrey attempted to show Eleanor Henderson ("Henderson") the Order. With her own copy in hand, Henderson responded that her daughter could only have the clothes, some cats and some pigs. From the beginning of the encounter, Henderson was yelling and screaming that her daughter could not have anything else.
 
 
 5
 While Officer Godfrey was trying to explain the Order to Henderson, she turned away and made threats to release her two Rottweilers on the officers. Henderson began to untie the Rottweilers from the stairway bannister just inside the house, whereupon Officers Godfrey, May and Samarin entered the house to prevent her from releasing the dogs.[1] Despite Officer Godfrey's efforts to restrain her, Henderson continued to fight. Henderson's combativeness and attempts to release the dogs on the officers resulted in her being handcuffed and taken outside.
 
 
 6
 The officers escorted Henderson to a police car, with Officer Godfrey holding one arm, and Officer May holding the other. Along the way, Henderson threw her feet from underneath her, and the officers had to hold her up to prevent a fall. In the process, Henderson suffered some bruising on her arm.
 
 
 7
 While Officer May transported Henderson to the police station, Officers Godfrey and Samarin entered the residence a second time to accompany Suzanne while she retrieved her belongings. According to Officer Godfrey's deposition, he was concerned that an unidentified male, previously observed in the residence, could be a threat to Suzanne. Suzanne gathered her property without incident, with the officers only entering the living room and Suzanne's bedroom.
 
 
 8
 Henderson brought an action under 42 U.S.C. § 1983 against the City of Simi Valley, Chief Randy Adams, and Officers Godfrey, May, and Samarin. Henderson's causes of action included illegal entry; false arrest and illegal imprisonment; excessive force; and a Monell claim for failure to train. A motion for partial summary judgment was filed by Henderson and a motion for summary judgment was filed by the defendants. On January 10, 2001, the district court denied Henderson's motion and granted the defendants' motion.
 
 
 9
 Henderson filed a timely Notice of Appeal on February 2, 2001. On appeal, Henderson only challenges the district court's ruling on her illegal entry and excessive force claims. She contends that the officers' second entry into her residence violated her Fourth Amendment rights and the officers used excessive force when they arrested her.
 
 
 STANDARD OF REVIEW
 
 
 10
 We review a district court's grant or denial of a motion for summary judgment de novo. Robi v. Reed, 173 F.3d 736, 739 (9th Cir.1999). "[W]e may affirm a summary judgment on any ground finding support in the record." Cairns v. Franklin Mint Co., 292 F.3d 1139, 1155 n. 14 (9th Cir.2002) (citation omitted).
 
 
 11
 Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, the district court correctly applied the relevant substantive law and there are no genuine issues of material fact. Clark v. City of Lakewood, 259 F.3d 996, 1004 (9th Cir. 2001). Under F.R.C.P. 56(e) "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).
 
 
 DISCUSSION
 
 I. ENTRY INTO HENDERSON'S RESIDENCE
 
 12
 42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution. Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials. To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred "under color of state law" and (2) the action resulted in the deprivation of a constitutional right or federal statutory right. There is no dispute that the officers were acting under color of state law. The dispute in this case was whether the officers unreasonably searched [Henderson's] house in violation of her Fourth and Fourteenth Amendment rights.
 
 
 13
 Jones v. Williams, 297 F.3d 930, 934 (9th Cir.2002) (citation omitted).
 
 
 14
 It is axiomatic that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." United States v. United States Dist. Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972).[2] The Supreme Court has recognized that "searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). However, the Supreme Court has permitted exceptions to the warrant requirement when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." New Jersey v. T.L.O., 469 U.S. 325, 351, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (Blackmun, J., concurring in judgment) (allowing school officials to conduct warrantless searches of student property without probable cause); see also O'Connor v. Ortega, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (holding that government employers may conduct warrantless, work-related searches of employees' offices without probable cause); Griffin v. Wisconsin, 483 U.S. 868, 873-74, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (concluding that state's operation of a probation system "presents `special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable cause requirements"); Camara v. Municipal Court, 387 U.S. 523, 538, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (holding that in certain circumstances government investigators need not adhere to the usual warrant requirement as long as their searches meet "reasonable legislative or administrative standards").
 
 
 15
 However, the special needs doctrine applies "[o]nly in ... exceptional circumstances," New Jersey v. T.L.O., 469 U.S. at 351, 105 S.Ct. 733, and must be analyzed in the context of the specific factual circumstances involved in the case. It applies only where the court determines, first, that specific "special needs, beyond the normal need for law enforcement," exist. Id. If such a finding is made, the court must next determine whether these special needs "make the warrant and probable-cause requirement [of the Fourth Amendment] impracticable" in a given context. Id. Only if the court makes both of these determinations "is a court entitled to substitute its balancing of interests for that of the Framers." Id. Assessing the particular facts of this case, we conclude that special needs, beyond the normal need for law enforcement, did exist, and those special needs made the warrant and probable cause requirement impracticable. Further, we conclude that the balance of interests in this case demonstrates that the officers' entry into Henderson's home did not run afoul of the Fourth Amendment.
 
 
 16
 A) Applicability of Special Needs Exception
 
 1) Special Need
 
 17
 The special need asserted in this case parallels the aims of California's Domestic Violence Prevention Act. The Act was adopted in response to the increase in episodic violence among family members. Like drug use and violent crime in the schools, domestic violence has become a "major social problem[]." T.L.O., 469 U.S. at 339, 105 S.Ct. 733; see also Cynthia D. Cook, Triggered: Targeting Domestic Violence Offenders in California, 31 McGeorge L. Rev. 328, 335 (Winter 2000) (describing domestic violence in California as a "rising epidemic").
 
 2) Non Law Enforcement Function
 
 18
 In determining whether a "Fourth Amendment intrusion" serves an interest "beyond the normal need for law enforcement," the Supreme Court has steered us toward an analysis of the purpose of the intrusion. See Nat'l Treas. Emp. Union v. Von Raab, 489 U.S. 656, 665-66, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989). In considering whether the Custom Service's drug testing program was "designed to serve the ordinary needs of law enforcement," the Supreme Court pondered the purpose of the program and permissible uses of the results. Id. at 666, 109 S.Ct. 1384.
 
 
 19
 Application of the Von Raab rubric to this case leads us to the conclusion that the officers were engaged outside the ordinary needs of law enforcement. Keeping the peace while a minor child exercises her rights pursuant to a court order is not akin to typical law enforcement functions. Rather, the officers were serving as neutral third parties acting to protect all parties. The officers did not enter the house to obtain evidence of criminal wrongdoing, and there is no underlying policy of the DVPA designed to gather evidence of violations of penal laws. Cf. Ferguson v. City of Charleston, 532 U.S. 67, 83, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001) (noting that the "immediate objective of the searches was to generate evidence for law enforcement purposes.") (emphasis in the original). In contrast, the purpose of the DVPA is to "prevent the recurrence of acts of violence ... and to provide for a separation of the persons involved in the domestic violence...." Cal. Fam.Code § 6220. The government's substantial interests in addressing domestic violence, no less than the government's concern for safe transportation at issue in Skinner v. Ry. Labor Executives Ass'n, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), present a special need that may justify departure from the ordinary warrant and probable-cause requirements. See Skinner, 489 U.S. at 619-20, 109 S.Ct. 1402.
 
 3) Impracticability of Warrant Requirement
 
 20
 Requiring the officers to get a warrant in this situation would not only be impracticable, but superfluous. The officers already had a court order in their possession detailing the relevant restraints imposed and property rights protected. Requiring an additional warrant to effectuate the exercise of court-ordered property rights would accomplish no objective that was not already considered and incorporated into the Order. Moreover, the delay inherent in obtaining a warrant would make it more difficult for officers to respond quickly to potentially violent violations of the court order, an eventuality the court order was designed to prevent. See Griffin, 483 U.S. at 876, 107 S.Ct. 3164. A warrant requirement would render the protective nature of the restraining order virtually useless. See Skinner, 489 U.S. at 623, 109 S.Ct. 1402. ("[T]he government's interest in dispensing with the warrant requirement is at its strongest when, as here, `the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search.'").
 
 
 21
 It is also noteworthy that the substance of the warrant requirement and underlying safeguards were adequately adhered to and advanced by the restraining order. "A warrant serves primarily to advise the citizen that an intrusion is authorized by law and limited in its permissible scope and to interpose a neutral magistrate between the citizen and the law enforcement officer...." Von Raab, 489 U.S. at 667, 109 S.Ct. 1384. Henderson was definitely cognizant of the intrusion and the legal authority on which it was based. She was personally served with the papers; she had already moved several items of Suzanne's property onto the front lawn; and the officers showed her another copy of the court order and attempted to explain its function to her. The Order delineated the property that Suzanne was being "given exclusive temporary use, control and possession" over. A neutral judicial officer determined that Henderson's rights must yield to those of Suzanne. Cf. Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948) ("When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer...."). The intrusion was not random, arbitrary or subject "to the discretion of the [officer] in the field." Von Raab, 489 U.S. at 667, 109 S.Ct. 1384 (citation omitted); see also Skinner, 489 U.S. at 621-22, 109 S.Ct. 1402 ("An essential purpose of a warrant requirement is to protect privacy interests by assuring citizens subject to a search or seizure that such intrusions are not the random or arbitrary acts of government agents.").
 
 
 22
 "In sum, imposing a warrant requirement in the present context would add little to the assurances of certainty and regularity already afforded by the [restraining order], while significantly hindering, and in many cases frustrating, the objectives of [keeping the peace and ensuring the respective safety of the protected and restrained individuals]." Skinner, 489 U.S. at 624, 109 S.Ct. 1402. In essence, "a warrant would provide little or nothing in the way of additional protection of personal privacy." Von Raab, 489 U.S. at 667, 109 S.Ct. 1384. Like the Supreme Court in Skinner, "[w]e do not believe that a warrant is essential to render the intrusions here at issue reasonable under the Fourth Amendment." Skinner, 489 U.S. at 624, 109 S.Ct. 1402. Rather, "[i]n such a setting, we think it reasonable to dispense with the warrant requirement." Griffin, 483 U.S. at 877, 107 S.Ct. 3164.
 
 
 23
 4) Impracticability of Probable Cause Requirement
 
 
 24
 Even more than the requirement of a warrant, a probable cause requirement would weaken the efficacy of the restraining order. Cf. Griffin, 483 U.S. at 878, 107 S.Ct. 3164. Probable cause determinations are "peculiarly related to criminal investigations." Von Raab, 489 U.S. at 667, 109 S.Ct. 1384 (citation omitted). Probable cause determinations are peculiarly unsuited to the task of maintaining the peace while effectuating a court order.[3]
 
 B) Balancing Competing Interests
 
 25
 In light of our conclusion that the "special needs" doctrine applies, we must now assess the constitutionality of the search by balancing the need to search against the intrusiveness of the search. Ferguson, 532 U.S. at 78, 121 S.Ct. 1281; United States v. Knights, 534 U.S. 112, 122 S.Ct. 587, 591, 151 L.Ed.2d 497 (2001) ("The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.") (internal quotation marks and citation omitted). Whether a particular search is "reasonable depends on the context within which[the] search takes place." T.L.O., 469 U.S. at 337, 105 S.Ct. 733.
 
 1) Henderson's Privacy Interest
 
 26
 "The sanctity of the home is not to be disputed." Segura v. United States, 468 U.S. 796, 810, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). However, the sanctity of the home must often times give way to intrusion for the public weal. See United States v. Cervantes, 219 F.3d 882, 889 (9th Cir.2000) (upholding search warrant and warrantless search to protect the public from the dangers associated with a methamphetamine lab since "preservation of life or protection against serious bodily injury are sufficient justifications for intruding upon a person's privacy interests"); United States v. Ojeda, 276 F.3d 486, 488 (9th Cir.2002) (noting the validity of warrantless residential searches to prevent destruction of evidence or a risk of danger to the public).
 
 
 27
 Henderson's privacy interest is also tempered by the fact that she had notice of the court-ordered property disbursement when she was served with the Order on August 10, 1999.[4] Advance notice of the Order minimized "any unsettling show of authority that may be associated with unexpected intrusions on privacy." Von Raab, 489 U.S. at 672 n. 2, 109 S.Ct. 1384 (internal quotation marks and citations omitted); see also Piroglu v. Coleman, 25 F.3d 1098, 1103 (D.C.Cir.1994) (noting that advance notice of the search decreases an individual's expectation of privacy).
 
 2) Government's Interest
 
 28
 The government has several patent interests that counterbalance Henderson's privacy interest. The Order was entered pursuant to California's Domestic Violence Prevention Act, which suggests at least two compelling government interests: 1) to prevent recurrence of acts of violence and sexual abuse; and 2) to keep potential combatants separated until the causes of the violence can be addressed. Cal. Fam. Code § 6220.[5]
 
 
 29
 The state judiciary has an interest in maintaining the integrity of its court orders by ensuring that they are consistently followed. See Dept. of Labor v. Hern Iron Works, Inc. (In re Establishment Inspection of Hern Iron Works, Inc.), 881 F.2d 722, 730 (9th Cir.1989) ("[O]ur system is premised on the simple fact that orders, once issued, must be respected. If litigants were able to disobey the duly ordered judgments of the courts at will, the integrity of the judicial system ... would be substantially undermined."); Fernos Lopez v. United States Dist. Court for Dist. of P.R., 599 F.2d 1087, 1091 (1st Cir.1979) ("If the court has jurisdiction over the person and the subject matter, the interests of orderly government demand that the court's orders be respected and obeyed.").
 
 
 30
 Finally, the government has a longstanding interest in maintaining peace and general order. See Medtronic, Inc. v. Lohr, 518 U.S. 470, 475, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) ("States traditionally have had great latitude under their police powers ... as to the protection of the lives, limbs, health, comfort, and quiet of all persons.") (citation omitted).
 
 3) Scope of Intrusion
 
 31
 "[T]he Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." Schmerber v. California, 384 U.S. 757, 768, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). As Justice Scalia explained in Vernonia School District v. Acton:
 
 
 32
 It is a mistake, however, to think that the phrase "compelling state interest," in the Fourth Amendment context, describes a fixed, minimum quantum of governmental concern, so that one can dispose of a case by answering in isolation the question: Is there a compelling state interest here? Rather, the phrase describes an interest that appears important enough to justify the particular search at hand, in light of other factors that show the search to be relatively intrusive upon a genuine expectation of privacy.
 
 
 33
 515 U.S. 646, 661, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) (emphasis removed from original).
 
 
 34
 The officers' intrusion into the house was limited to those particular areas where entry was required to retrieve Suzanne's property. The officers played no active role in Suzanne's court-ordered foray. They merely stood by to prevent a breach of the peace while the court's order was implemented. The officers' conduct was consistent with their function as keepers of the peace. See United States v. Scott, 665 F.2d 874, 877 (9th Cir.1981) (upholding search of automobile where police were acting in accordance with their caretaking functions to secure the property and its contents).[6]
 
 
 35
 There is no evidence in the record that the officers in any way exploited their presence in the residence, or used it as a means of subterfuge. See Segura, 468 U.S. at 812, 104 S.Ct. 3380 (noting that there was no evidence the agents in any way exploited their presence in the apartment). Thus, the "invasion of privacy was not significant." Vernonia, 515 U.S. at 660, 115 S.Ct. 2386.
 
 
 36
 Weighing the factors we have considered above — the decreased expectation of privacy, the government interest served, and the relative unobtrusiveness of the search — we conclude that the police officers' entry into the Henderson residence was reasonable and hence constitutional.
 
 
 37
 We caution against the assumption that police entry into a residence with a restraining order in hand will pass constitutional muster in all circumstances. In this case, it was significant that the police officers became involved only at Suzanne's request, and their actions were limited to accompanying Suzanne while she retrieved her property. This would be an entirely different case if the officers had targeted a suspect as part of a normal law enforcement investigation and then enlisted the help of a protected person as a subterfuge to search the suspect's home without a warrant. Of course, we express no view as to the outcome of that factual scenario. We mention it only to emphasize the point that the special needs exception is not conducive to wide application.
 
 II. EXCESSIVE FORCE CLAIM
 
 38
 A party opposing summary judgment has the affirmative obligation to proffer evidence from which a jury could reasonably find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where the record taken as a whole would not lead a rational trier of fact to find for the non-moving party, no genuine issue remains for trial. Nord v. Black and Decker Disability Plan, 296 F.3d 823, 827-28 (9th Cir.2002). The district court found that evidence in support of Henderson's excessive force claim was "woefully sparse." We agree with the district court that Henderson failed to raise a material question of fact regarding her excessive force claim. Cf. Robinson v. Solano Co., 278 F.3d 1007, 1013-14 (9th Cir.2002) (reversing a summary judgment ruling in favor of the officers where the officers pointed guns and handcuffed a suspect who was approaching peacefully). Summary judgment was properly granted in light of the record before the district court.
 
 
 CONCLUSION
 
 
 39
 While the limited entry into Henderson's house doubtless infringed upon legitimate privacy expectations, Henderson's expectations do not outweigh the government's compelling interests in maintaining peace and good order through enforcement of domestic violence orders. Henderson's excessive force claim fails because she failed to adduce sufficient evidence to raise a material question of fact. Accordingly, the district court's decision is AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 It is not entirely clear from the record when Officer May arrived to provide support to Officers Godfrey and Samarin
 
 
 [2]
 The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment inMapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
 
 
 [3]
 In fact, it is not at all clear what facts the officers would adduce to meet a probable cause requirement, other than the facts used to support the application for the Order. Reiteration of those facts to meet a theoretical probable cause requirement would be an exercise in circuity
 
 
 [4]
 Henderson's advance knowledge of the imminent intrusion is further evidenced by the fact that she had already removed several pieces of Suzanne's property from inside the residence prior to the officers' arrival
 
 
 [5]
 Ca. Fam.Code § 6220 provides: "The purposes of this division are to prevent the recurrence of acts of violence and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence."
 
 
 [6]
 It is noteworthy that the level of intrusion was exacerbated by Henderson's own actions. If her desire was to keep the officers out of her home, she could have gathered the designated items and left them outside, or she could have agreed to remain outside with the officers (along with the unidentified male) while Suzanne retrieved her property