320 F.3d 979
 Nicholas LASSONDE, Plaintiff-Appellant,
v.
PLEASANTON UNIFIED SCHOOL DISTRICT; Mary Frances Callan, individually and as Superintendent of Pleasanton Unified School District; Jim Negri, individually and as Assistant Superintendent of Pleasanton Unified School District; and Bill Coupe, individually and as Principal of Amador Valley High School, Defendants-Appellees.
 No. 01-17226.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted January 17, 2003.
 Filed February 19, 2003.
 
 Steven N.H. Wood, Stoddard, Bergquist & Wood, LLP, Walnut Creek, CA, for the plaintiff-appellant.
 Gregory E. Stubbs, Stubbs & Leone, Walnut Creek, CA, for the defendants-appellees.
 Bruce W. Green, The National Legal Foundation, Virginia Beach, VA, for the amicus curiae.
 Appeal from the United States District Court for the Northern District of California; Thelton E. Henderson, District Judge, Presiding. D.C. No. CV-00-02150-TEH(JL).
 Before HUG, ALARCÓN, and GRABER, Circuit Judges.
 OPINION
 GRABER, Circuit Judge.
 
 
 1
 Plaintiff Nicholas Lassonde brings this action under 42 U.S.C. § 1983, alleging that school officials violated his First Amendment rights by censoring sectarian, proselytizing portions of a speech that Plaintiff gave at his high school graduation ceremony. The district court granted summary judgment in favor of Defendants, concluding that the school officials' acts were necessary to avoid violating the Establishment Clause. We affirm.
 
 FACTUAL AND PROCEDURAL HISTORY
 
 2
 Because of his sterling grade-point average of 4.24, Plaintiff was one of two co-salutatorians of the Amador Valley High School class of 1999. As a result of his academic standing, he was invited to deliver a speech at the school's graduation ceremony that year. Plaintiff, who is a devout Christian, drafted a speech that quoted extensively from the Bible. In his declaration, Plaintiff explained that he intended for the speech to "express[][his] desire for[his] fellow graduates to develop a personal relationship with God through faith in Christ in order to better their lives."
 
 
 3
 Principal Coupe, who maintained control over all aspects of the graduation ceremony, asked Plaintiff to submit a draft of his speech. Plaintiff did so. Coupe reviewed the draft and, in conjunction with the school district's counsel, determined that allowing a student to deliver overtly proselytizing comments at a public high school's graduation ceremony would violate the Establishment Clauses of both the United States and the California Constitutions. Accordingly, Coupe and the district's counsel advised Plaintiff that references to God as they related to Plaintiff's own beliefs were permissible, but that proselytizing comments were not.
 
 
 4
 For example, Plaintiff intended to discuss the general moral decay of American society during the past 30 years and to encourage his fellow students to turn to God and Jesus for strength. The three portions of his speech that the school told him to remove were:
 
 
 5
 I urge you to seek out the Lord, and let Him guide you. Through His power, you can stand tall in the face of darkness, and survive the trends of "modern society."
 
 
 6
 As Psalm 146 says, "Do not put your trust in princes, in mortal men, who cannot even save themselves. When their spirit departs, they return to the ground; on that very day their plans come to nothing. Blessed is he whose help is the God of Jacob, whose hope is in the Lord his God, the Maker of heaven and earth, the sea, and everything in them — the Lord, who remains faithful forever. He upholds the cause of the oppressed and gives food to the hungry. The Lord sets prisoners free, the Lord gives sight to the blind, the Lord lifts up those who are bowed down, the Lord loves the righteous. The Lord watches over the alien and sustains the fatherless and the widow, but he frustrates the ways of the wicked."
 
 
 7
 ....
 
 
 8
 ... "For the wages of sin is death; but the gift of God is eternal life through Jesus Christ our Lord." Have you accepted the gift, or will you pay the ultimate price?
 
 
 9
 Although Defendants demanded that Plaintiff excise those portions, they allowed him to retain several personal references to his religion. For example, Plaintiff's speech began with a dedication to the memory of his grandfather, who had planned to attend the graduation but who, just that past week, had gone "home to be with the Lord." Plaintiff's speech closed with the words, "Good Luck and God Bless!"
 
 
 10
 Before Plaintiff agreed to excise the proselytizing portions of the graduation speech, the parties engaged in discussions to determine what Plaintiff would and would not be allowed to say. Plaintiff's counsel suggested that the school district provide a "disclaimer" that would state that the views of the student speakers did not represent the views of the school district. This suggestion was rejected. The parties eventually reached a compromise. Under protest, Plaintiff agreed that he would deliver his speech without the proselytizing passages and would hand out copies of the full text of his proposed draft speech just outside the site where the graduation ceremony would be held.
 
 
 11
 On June 18, 1999, Amador Valley High School held its graduation ceremony. The ceremony took place at the Alameda County Fairgrounds, but it was financed and insured entirely by the school district and was conducted entirely under the school's direction. Plaintiff delivered his speech at the ceremony and distributed handouts as agreed. When he reached the portions of the speech that had been excised, he informed his fellow students that portions had been censored. He told the audience that he would distribute copies of the uncensored speech outside the graduation ceremony and that he would give the full speech on Sunday at his church.
 
 
 12
 Nearly one year later, Plaintiff filed this action seeking damages from the school district; Mary Frances Callan, the school district's superintendent; Jim Negri, assistant superintendent; and Bill Coupe, the principal. Plaintiff asserted seven claims against Defendants: violation of Plaintiff's federal constitutional rights to free speech, religious liberty, and equal protection; violation of Plaintiff's state constitutional rights to free speech, religious liberty, and equal protection; and violation of a state education statute. Defendants answered that their actions were protected by qualified immunity.
 
 
 13
 Both parties moved for summary judgment. After dismissing claims against the school district and the school officials in their individual capacities under the Eleventh Amendment, the district court granted summary judgment in favor of the remaining Defendants in their official capacities. Relying on this court's decision in Cole v. Oroville Union High School District, 228 F.3d 1092 (9th Cir. 2000), the district court concluded that Defendants' actions were necessary to avoid violating the Establishment Clause. The court rejected Plaintiff's equal protection argument and declined to exercise supplemental jurisdiction over Plaintiff's state-law claim.
 
 
 14
 Plaintiff filed a timely notice of appeal. His appeal is limited to the question whether, under the first step of the qualified immunity analysis required by Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), Plaintiff has alleged facts amounting to a federal constitutional violation. Specifically, the questions posed are whether the restriction on Plaintiff's speech violated the First Amendment and whether the school's rejection of Plaintiff's suggested disclaimer as a "less restrictive" alternative to censoring Plaintiff's speech violated the First Amendment.
 
 STANDARD OF REVIEW
 
 15
 We review de novo a district court's grant of summary judgment. Henderson v. City of Simi Valley, 305 F.3d 1052, 1055 (9th Cir.2002). Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, there are no genuine issues of material fact. Id.
 
 DISCUSSION
 
 16
 Under Saucier, 533 U.S. at 200, 121 S.Ct. 2151, we must conduct a two-step inquiry in order to determine whether Defendants are entitled to qualified immunity. First, we must decide whether Plaintiff has asserted facts that amount to a violation of his federal constitutional rights. Id. If so, we must decide whether the law surrounding that constitutional violation was "clearly established" when Defendants acted. Id.
 
 
 17
 At the first step, Plaintiff has not alleged facts amounting to a constitutional violation. That being so, we need not reach the second step of the Saucier analysis.
 
 
 18
 Under our precedent in Cole, Defendants' actions were necessary to avoid a conflict with the Establishment Clause. 228 F.3d at 1101. The Supreme Court's opinion in Good News Club v. Milford Central School, 533 U.S. 98, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001), which was decided after Cole, does not require a different result.
 
 
 19
 A. Cole controls.
 
 
 20
 Our decision in Cole squarely controls Plaintiff's case. The facts are almost identical.[1] The student speakers in Cole, one of whom was a co-valedictorian, sought to give similar proselytizing speeches at their graduation ceremony. Cole, 228 F.3d at 1096. As was its policy, the school district reviewed the speeches before the graduation ceremony took place. Id. The school district required that the students in Cole "tone down the proselytizing and sectarian religious references." Id. The students refused and sued for damages.
 
 
 21
 Applying a two-part qualified immunity analysis that is consistent with Saucier, 533 U.S. at 201, 121 S.Ct. 2151, we concluded in Cole that we need not go beyond the first step:
 
 
 22
 We conclude the District officials did not violate the students' freedom of speech. Even assuming the Oroville graduation ceremony was a public or limited public forum, the District's refusal to allow the students to deliver a sectarian speech ... as part of the graduation was necessary to avoid violating the Establishment Clause under the principles applied in Santa Fe Independent School District v. Doe, 530 U.S. 290, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000), and Lee v. Weisman, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992). See Rosenberger v. Rector and Visitors of the Univ. of Va., 515 U.S. 819, 837, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) (analyzing whether a university's viewpoint discrimination was excused by the necessity of complying with the Establishment Clause); Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 761-62, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995) ("There is no doubt that compliance with the Establishment Clause is a state interest sufficiently compelling to justify content-based restrictions on speech.")....
 
 
 23
 228 F.3d at 1101.
 
 
 24
 Cole held that the school district's actions were necessary for two related, but subtly distinct, reasons. First, the school district had to censor the speech in order to avoid the appearance of government sponsorship of religion. Id. at 1101; see also Santa Fe, 530 U.S. at 305-10, 120 S.Ct. 2266. Second, allowing the speech would have had an impermissibly coercive effect on dissenters, requiring them to participate in a religious practice even by their silence. Cole, 228 F.3d at 1104; see also Lee, 505 U.S. at 593, 112 S.Ct. 2649.
 
 
 25
 As for the sponsorship concern, in Cole we determined that the school district's "plenary control over the graduation ceremony, especially student speech, makes it apparent [that the sectarian] speech would have borne the imprint of the District." 228 F.3d at 1103. The school district authorized the valedictory speech in Cole as part of the graduation program, the graduation program was financed by the district, and the principal had supervisory control over the graduation and had the final authority to approve the content of student speeches. Id.
 
 
 26
 In Plaintiff's case, the school district exercised the same "plenary control" over the graduation ceremony. Speakers were selected by the school solely because of their academic achievement; that is, the school endorsed and sponsored the speakers as representative examples of the success of the school's own educational mission. The principal reviewed and approved the speeches beforehand. The facilities, although not owned by the school district as in Cole, were rented and insured by the district for the ceremony and were, during the ceremony, operated completely by the school.
 
 
 27
 As further support for our decision in Cole, we held that allowing the sectarian speech "would have constituted District coercion of attendance and participation in a religious practice because proselytizing, no less than prayer, is a religious practice." Id. at 1104. "[A]llowing [the] speech at graduation would have compelled a dissenter's implicit participation in the proselytizing." Id. Relying on the Supreme Court's opinion in Lee, we explained that the relevant inquiry is "whether `a reasonable dissenter ... could believe that the group exercise signified her own participation or approval of it.'" Id. at 1104 (quoting Lee, 505 U.S. at 593, 112 S.Ct. 2649) (emphasis in Cole).
 
 
 28
 Reviewing the excised portions of Plaintiff's speech, there is no question that a reasonable dissenter could have felt that silence signified approval or participation. Even if the school district could have conducted the proceedings so as to avoid the appearance of governmental "entanglement" with Plaintiff's speech, it had no means of preventing the coerced participation of dissenters attending their graduation ceremony other than censoring Plaintiff's speech. As Lee describes it, "high school graduation is one of life's most significant occasions." Lee, 505 U.S. at 595, 112 S.Ct. 2649. Forcing a dissenter to make the choice between attending such an event and participating in a religious practice with which the dissenter does not agree is not constitutionally permissible. Id. at 595-96, 112 S.Ct. 2649.
 
 
 29
 Plaintiff attempts to distinguish Cole by arguing that the school district should have allowed him a "less restrictive" alternative to complete censorship. Because Cole did not explicitly consider whether a disclaimer could distance a public school far enough from proselytizing speech, Plaintiff argues, it does not control. This argument is unpersuasive for three reasons.
 
 
 30
 First, Cole implicitly foreclosed the argument. Cole held that the school's restriction was "necessary" to avoid running afoul of the Establishment Clause. 228 F.3d at 1101. We did not hold that, in censoring the speech, the school had done more than what was required; rather, we held that the steps taken were "necessary." In other words, if the school had not censored the speech, the result would have been a violation of the Establishment Clause.
 
 
 31
 Second, Cole's implicit holding is correct. Even if a disclaimer were given, and even if it could dissolve governmental "entanglement" sufficiently, a disclaimer could not address the other ground underlying both Cole and Lee: permitting a proselytizing speech at a public school's graduation ceremony would amount to coerced participation in a religious practice. Regardless of any offered disclaimer, a reasonable dissenter still could feel that there is no choice but to participate in the proselytizing in order to attend high school graduation. Although a disclaimer arguably distances school officials from "sponsoring" the speech, it does not change the fact that proselytizing amounts to a religious practice that the school district may not coerce other students to participate in, even while looking the other way.
 
 
 32
 Third and finally, even if Defendants were obliged to provide a "less restrictive" alternative to absolute censorship, they did. Defendants permitted Plaintiff to distribute copies of the complete draft just outside the graduation venue, and he did.
 
 
 33
 In summary, Plaintiff's case is indistinguishable from Cole. Cole controls unless some later Supreme Court or en banc authority undermines its logic.[2]
 
 
 34
 B. The Supreme Court's decision in Good News Club does not detract from Cole.
 
 
 35
 Plaintiff argues that Cole no longer is good law after the Supreme Court's decision in Good News Club. We disagree.
 
 
 36
 In Good News Club, the Supreme Court held that a New York school district's regulation that allowed after-hours access to school facilities for all comers except those espousing a religious message constituted impermissible viewpoint discrimination. 533 U.S. at 110, 121 S.Ct. 2093. The Court concluded that the district's interest in avoiding a violation of the Establishment Clause was not compelling enough to justify discrimination on the basis of the speaker's viewpoint. Id. at 113, 121 S.Ct. 2093.
 
 
 37
 The decision in Good News Club hinged on the fact that "the school ha[d] no valid Establishment Clause interest" in precluding religious speech in that context. Id. at 113, 121 S.Ct. 2093. The censored religious activities took place outside school hours, and participation was purely voluntary. Id. at 115-16, 121 S.Ct. 2093. The Court carefully distinguished its decision in Lee, recognizing that Lee had "concluded that attendance at the graduation exercise was obligatory." Id. at 115, 121 S.Ct. 2093. "Here, where the school facilities are being used for a nonschool function and there is no government sponsorship of the Club's activities, Lee is inapposite." Id. at 116, 121 S.Ct. 2093.
 
 
 38
 The setting of Plaintiff's case is the same as that in Lee. The graduation ceremony was a school-sponsored function that all graduating seniors could be expected to attend. Unlike in Good News Club, where circumstances made the "consideration of coercive pressure and perceptions of endorsement" essentially irrelevant, 533 U.S. at 120-21, 121 S.Ct. 2093 (Scalia, J., concurring) (citation omitted), here those issues are in the forefront. See also Prince v. Jacoby, 303 F.3d 1074, 1095 (9th Cir. 2002) (Hall, J., concurring) (distinguishing graduation ceremonies from club meetings at which attendance is voluntary).
 
 
 39
 In short, the two situations are materially different. The after-hours meetings in Good News Club lacked the imprimatur of the school, whereas the essence of graduation is to place the school's imprimatur on the ceremony — including the student speakers that the school selected. Good News Club involved only the voluntary participation of some students, with prior parental permission, whereas the essence of high school graduation is the participation of all, as a captive audience. Good News Club does not change the result that Cole demands.
 
 CONCLUSION
 
 40
 Cole controls. Good News Club did not undermine Cole. There is no room in Cole for a public school to disclaim sectarian, proselytizing religious speech at a graduation ceremony.
 
 
 41
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 There are a few minor differences, but none is material. For example, Plaintiff here gave his speech with Defendants' redactions, while the plaintiff inCole refused to deliver a speech at all. However, the difference in the plaintiffs' reactions to the censorship is not relevant to the question whether the censorship itself violated their constitutional rights.
 
 
 [2]
 There are no relevant en banc cases that affect the holding in Cole