CERTAIN UNDERWRITERS AT LLOYDS, LONDON, Subscribing to Certificate of Insurance OP01 0025, through Puget Sound Underwriters, Inc., Plaintiffs,

v.

INLET FISHERIES, INC., an Alaska corporation; and Inlet Fish Producers, Inc., an Alaska corporation, Defendants.

Inlet Fish Producers, Inc., an Alaska corporation, Third–Party Plaintiff,

v.

Totem Agencies, Inc., a Washington corporation; and American E & S Insurance Brokers California, Inc., a Washington corporation, Third–Party Defendants.

No. A04–58CV(JWS).

United States District Court, D. Alaska.

Oct. 27, 2004.

---

## ORDER FROM CHAMBERS

SEDWICK, District Judge.

### I. MOTION PRESENTED

At docket 86 defendants Inlet Fisheries, Inc. and Inlet Fish Producers, Inc. ("Inlet") cross-move for summary judgment asking the court to rule that as a matter of law a question on an insurance application form is ambiguous. Plaintiffs Certain Underwriters at Lloyds, London ("Lloyds") oppose Inlet's motion. The motion has been fully briefed. Neither party requested oral argument, and it would not be of material aid to the court.

### II. BACKGROUND [1]

In this action, Lloyds seeks a declaration that an insurance policy is void *ab initio* on the grounds that Inlet violated the federal maritime duty of utmost good faith (*uberrimae fidei*). More specifically, Lloyds alleges that Inlet failed to make full and complete disclosure of facts material to the underwriting decision by not disclosing its prior pollution loss history and the reasons that its prior vessel pollution insurer canceled Inlet's policy. Inlet has cross-moved for summary judgment alleging that, as a matter of law, the application form provided was ambiguous.[2]

Question number 5 on the "Application: U.S. Oil Pollution Act of 1990," which reads: "5. Pollution Loss History" was completed by inserting the word "None" in the space immediately following the question. Lloyds alleges in its complaint that, in fact, Inlet had a prior pollution loss history, which, had it been disclosed, would have resulted in the application for insurance being denied. Inlet asserts that the application form is ambiguous in that question 5 could reasonably be and was interpreted as being directed to the loss history of the vessels to be insured, not the applicant's loss history.

### III. SUMMARY JUDGMENT STANDARD AND APPLICABLE LAW

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.[3] In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial.[4] There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.[5]

As a rule, "[s]tate law governs disputes arising under marine insurance contracts only in the absence of a federal

---

1. The background in this case is extensively set forth in the Order From Chambers at docket 114. It is not repeated here except as necessary to an understanding of the instant motion.

2. The application form was provided by Puget Sound Underwriters, Inc., the underwriting agent employed by Lloyds. Puget Sound Underwriters is now known as American E & S Insurance Brokers California, Inc., a third-party defendant.

3. FED. R. CIV. P. 56(c); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (*en banc*); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989).

4. FED. R. CIV. P. 56(e); *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055–56 (9th Cir.2002).

5. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice." [6] Inlet assumes without discussion that to the extent state law applies to the interpretation of the application form, it is the law of Alaska. When applying state law, a federal court generally applies the law of the forum state, including its choice of law rules. When a case is transferred from one district to another, the law of the transferor state applies.[7] This case was transferred from the Western District of Washington; therefore, to the extent that the law of the forum applies, including the choice of law rules, it is the law of Washington. However, as previously noted by the court, this case invokes the court's admiralty jurisdiction.[8]

> Federal common law applies to choice-of-law determinations in cases based on federal question jurisdiction, such as admiralty. Federal common law follows the approach of the Restatement (Second) of Conflicts of Laws.[9]

The insurance policy at issue contains no choice of law provision. In the absence of a choice of law provision, the Restatement directs consideration of (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. Under the *Restatement* approach, these contacts are evaluated according to their relative importance with respect to the dispute.[10]

*Place of contracting.* The policy was issued by Puget Sound Underwriters in Seattle, Washington.

*Place of negotiation.* To the extent there were "negotiations" between the parties, they appear to have been between the parties' agents, and they took place in Washington.

■ *Place of Performance.* Where, as here, an indemnification policy does not designate a place of performance, an insurer must make payment in the state in which the insured is located;[11] in this case, Alaska.

*Location of contract's subject matter.* The subjects of the insurance policy were vessels located in or around Bethel, Alaska.

*Domicile, residence, nationality, place of incorporation, and place of business of the parties.* Inlet Fisheries and Inlet Fish Producers are both incorporated and have a principal place of business in Alaska. Lloyds is of British nationality and has its principal place of business in London, England.

■ Washington, Alaska, and England all have some interest in the policy at issue. No party has asserted that English law applies, and its limited contacts are of minimal significance under the *Restate-*

---

**6.** *Kiernan v. Zurich Cos.*, 150 F.3d 1120, 1121 (9th Cir.1998) (citation and quotations omitted). *See also* 1 THOMAS J. SCHOENBAUM ADMIRALTY AND MARITIME LAW § 4–2 at 165 ("the application of state law in admiralty is a *default* rule: state law applies if there is no well-established federal admiralty rule and there is no need to create one") (emphasis in original).

**7.** *International Business Machines Corp. v. Bajorek*, 191 F.3d 1033, 1036–37 (9th Cir. 1999).

**8.** Order From Chambers at docket 114.

**9.** *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287, 1297 (9th Cir.1997) (citations omitted); *see also Aqua–Marine Constructors, Inc. v. Banks*, 110 F.3d 663, 671, 674 (9th Cir.), *cert. denied sub nom. Polaris Insurance Co. v. Aqua–Marine Constructors, Inc.*, 522 U.S. 933, 118 S.Ct. 339, 139 L.Ed.2d 263 (1997).

**10.** *Restatement (Second) of Conflict of Laws*, § 188(2).

**11.** *See* 2 *Couch on Insurance*, § 24:13.

*ment* approach. Washington, being the location where negotiations took place and the contract was made, has significant contacts with the insurance policy. However, Washington's interest is diluted by the fact that neither of the parties to the insurance contract are incorporated, domiciled or maintain a principal place of business there. Alaska, on the other hand, is the location of the subjects of the insurance policy, the place of incorporation and domicile of the insured, and the location where performance is presumed to occur. In addition, the insured risk, marine pollution, was likely to (and did) occur in Alaskan waters. Alaska has a strong interest in assuring that the costs of cleaning up pollutants spilled in Alaskan waters do not become a charge against the public treasury.

Considering all of the above, the court holds that to the extent state law is applicable to the interpretation of the insurance contract, it is Alaska law.

## IV. DISCUSSION

The thrust of Inlet's argument is that the term "Pollution Loss History" in the application form is ambiguous in that it is reasonably susceptible to two interpretations:

(1) that it is directed to the applicant, not just the vessels (as contended by Lloyds); or

(2) that it is directed solely to the vessels (as contended by Inlet). In its memorandum in support of the cross-motion, Inlet states:

> Defendants, however reasonably interpreted question 5 of the applica-

tion, "pollution loss history," to relate to the insured *vessels,* not all the various *entities* applying for the policy.[12] (Emphasis in the original)

Totem on behalf of Defendants, likewise reasonably interpreted Lloyds question of "pollution loss history" to pertain to the vessels actually listed, rather than the various entities who owned those vessels.[13]

■ The argument advanced by Inlet has a fundamental deficiency: it is not supported by any evidence in the record. Statements by counsel in briefs do not constitute evidence and can neither sustain nor defeat a motion for summary judgment.[14] There is no evidence that Inlet reasonably interpreted question 5 in the manner indicated in its supporting memorandum. Indeed, what evidence there is in the record indicates that Inlet more likely than not did not interpret the question at all. The application form was completed by Totem Agencies, Inc. ("Totem") on behalf of Inlet, and there is no indication that Inlet itself was ever provided a copy of the application form before it was filled in and submitted by Totem. Nor has Inlet presented any evidence that Totem interpreted the question in the manner suggested by Inlet.

■ The court must express a significant degree of skepticism that Totem, an insurance agency familiar with underwriting practices, would interpret "prior pollution history" as being limited to the vessels to the exclusion of the applicant for insurance. Vessels do not cause toxic spills; it is the operators of vessels who cause spills.[15] Anyone who has ever completed

---

12. IFI's and IFP's Memorandum Supporting (1) Opposition to Lloyds' Motion for Summary Judgment re: Avoidance; (2) Cross–Motion re: Ambiguity; and (3) Motion for 56(f) Continuance [Docket 88], at page 5.

13. *Id.* at page 7.

14. *See Barcamerica International USA Trust v. Tyfield Importers, Inc.,* 289 F.3d 589, 593 n. 4 (9th Cir.2002).

15. That is not to say, however, that history of the vessel is unimportant. The condition of a vessel can increase the probability of a spill or leak of oil or other toxic substances.

an application for automobile insurance knows that it is principally the driving records of the insured drivers of the vehicle that is of interest to the insurance company.

Whether the court were to apply Alaska or Federal law to this issue the result would be the same. The court is unable to render a ruling as a matter of law based upon supposition or a hypothetical situation. Because Inlet failed to introduce any evidence that the application form was *in fact interpreted* in the manner ascribed to it by Inlet, and because it is illogical to assume that it would have been considered ambiguous by Totem, the court cannot hold as a matter of law under the facts presented that the question "Pollution Loss History" is ambiguous.

### V. CONCLUSION

For the reasons set forth above, the Cross–Motion for Summary Judgment Re: Ambiguity filed by Inlet Fisheries, Inc. and Inlet Fish Producers, Inc. at docket 86 is hereby **DENIED**.